**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BRAINCHILD SURGICAL DEVICES, LLC, a New York limited liability company, on behalf of themselves and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CPA GLOBAL LIMITED a foreign entity formed under the laws of the Island of Jersey, Channel Islands,<br><br>Defendant. | Case No. 1:21-cv-00554-RDA-JFA |

**REPLY IN SUPPORT OF DEFENDANT CPA GLOBAL LIMITED'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT ................................................................................................................... 3

    A.   Brainchild Fails to State a Claim for Breach of Contract ........................................ 3

        1.   Brainchild Cannot Rewrite the Terms of the Contract ............................... 3

            (a)   Brainchild's Allegations Regarding the Country Charge Are Contrary to the Plain Language of the Contract............................................. 3

            (b)   Brainchild's Allegations Regarding the Funds Management Fee Are Contrary to the Plain Language of the Contract ......................... 4

            (c)   The Funds Management Fee Provision Is Not Ambiguous ...................... 6

        2.   Brainchild Concedes It Does Not State a Claim for Breach of Contract Based on "Opaque Invoices" ............................................................ 8

        3.   Brainchild Ignores That It Agreed to Pay the Charges in the Renewal Notices..... 8

    B.   Brainchild's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Duplicative of Its Breach of Contract Claim ........................................ 10

    C.   Brainchild Fails to State a Claim for Fraudulent Concealment ..................................... 12

        1.   Brainchild Cannot State a Claim for Fraud Because Its Allegations Arise Entirely From the Contract ....................................................................... 12

        2.   Brainchild Fails to Allege an Intent to Conceal ....................................... 14

        3.   Brainchild Fails to Allege With Particularity the Circumstances of Any Misrepresentation or Actionable Omission as Required by Rule 9(b)............... 16

    D.   Brainchild's Unjust Enrichment Claim Is Foreclosed by Virginia Law ...................... 17

    E.   Brainchild Concedes It Cannot Bring a Claim for Injunctive Relief............................ 19

    F.   The Complaint Should Be Dismissed With Prejudice .................................................. 19

III.  CONCLUSION ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### Cases

*Acorn Structures, Inc. v. Swantz*,
　846 F.2d 923 (4th Cir. 1988) ............................................................... 17

*Albrecht v. Lund*,
　845 F.2d 193 (9th Cir. 1988) ............................................................... 20

*Augusta Mut. Ins. Co. v. Mason*,
　645 S.E.2d 290 (Va. 2007) ................................................................... 17

*Bank of Montreal v. Signet Bank*,
　193 F.3d 818 (4th Cir. 1999) ............................................................... 14

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
　921 F. Supp. 2d 56 (S.D.N.Y. 2013) ................................................. 6, 7

*Bartolomucci v. Fed. Ins. Co.*,
　770 S.E.2d 451 (Va. 2015) ..................................................................... 6

*Bauer-Robertson v. Shiva Fin., LLC*,
　2021 WL 1323403 (E.D. Va. Apr. 8, 2021) ....................................... 16

*Bloch v. Exec. Office of the President*,
　164 F. Supp. 3d 841 (E.D. Va. 2016) ................................................. 19

*CGI Fed. Inc. v. FCi Fed., Inc.*,
　814 S.E.2d 183 (Va. 2018) ................................................................... 17

*Cty. of Grayson v. RA-Tech Servs.*,
　2014 WL 2257155 (W.D. Va. May 29, 2014) .................................... 16

*Cty. of Grayson v. Spane*,
　609 F. App'x 150 (4th Cir. 2015) ....................................................... 16

*Dress v. Cap. One Bank (USA), N.A.*,
　849 F. App'x 55 (4th Cir. 2021) ........................................... 6, 7, 11, 20

*Dunn Const. Co. v. Cloney*,
　628 S.E.2d 943 (Va. 2009) ................................................................... 13

*Edwards v. Puffenbarger*,
　835 F.2d 874 (4th Cir. 1987) ......................................................... 13, 14

*Enomoto v. Space Adventures, Ltd.*,
　624 F. Supp. 2d 443 (E.D. Va. 2009) ................................................. 11

*Fiorani v. Navy Fed. Credit Union*,
　2015 WL 11112156 (E.D. Va. Apr. 14, 2015),
　*aff'd*, 613 F. App'x 220 (4th Cir. 2015) .............................................. 20

*Foman v. Davis*,
    371 U.S. 178 (1962) ........................................................................................... 19

*Foreign Mission Bd. of S. Baptist Convention v. Wade*,
    409 S.E.2d 144 (Va. 1991) ........................................................................... 6, 13

*Girgis v. Salient Sols., Inc.*,
    2012 WL 2792157 (E.D. Va. July 9, 2012) ..................................................... 15

*Glaser v. Enzo Biochem, Inc.*,
    126 F. App'x 593 (4th Cir. 2005) .................................................................... 19

*Hewlette v. Hovis*,
    318 F. Supp. 2d 332 (E.D. Va. 2004) .............................................................. 13

*Hill v. State St. Corp.*,
    2011 WL 3420439 (D. Mass. Aug. 3, 2011) ...................................................... 7

*Int'l Union of Operating Engineers, Stationary Engineers Loc. 39 Pension Tr. Fund v. Bank of New York Mellon Corp.*,
    2012 WL 476526 (N.D. Cal. Feb. 14, 2012) ..................................................... 7

*Jackson v. Ocwen Loan Servicing*,
    2016 WL 1337263 (E.D. Va. Mar. 31, 2016) ................................................... 12

*JTH Tax, Inc. v. Aime*,
    984 F.3d 284 (4th Cir. 2021) .......................................................................... 11

*Kurlander v. Kaplan*,
    2020 WL 9454964 (M.D. Fla. Aug. 5, 2020) ................................................... 13

*Lambert v. Navy Fed. Credit Union*,
    2019 WL 3843064 (E.D. Va. Aug. 14, 2019) .............................................. 11, 20

*Landmark HHH, LLC v. Gi Hwa Park*,
    671 S.E.2d 143 (Va. 2009) ................................................................................ 3

*Likewise in Stoney Glen, LLC v. S. Bank & Tr. Co.*,
    944 F. Supp. 2d 460 (E.D. Va. 2013) .............................................................. 11

*Maor v. Dollar Thrifty Automotive Group, Inc.*,
    2018 WL 4698512 (S.D. Fla. 2018) ................................................................... 9

*Morefield v. Bailey*,
    959 F. Supp. 2d 887 (E.D. Va. 2013) .............................................................. 19

*Morrison v. Wells Fargo Bank, N.A.*,
    30 F. Supp. 3d 449 (E.D. Va. 2014) ........................................................... 15, 17

*Multi- Hous. Tax Credit Partners XXX v. Alexander Dairy Assocs., LLC*,
    2020 WL 7419218 (E.D. Va. Dec. 18, 2020) ................................................... 19

*MZL Capital Holdings, Inc v. TD Bank, N.A.*,
    734 Fed. App'x 101 (3rd. Cir. 2018) ................................................................. 6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) .......................................................................... 10

*Norris v. Mitchell*,
 495 S.E.2d 809 (Va. 1998) ......................................................................... 14

*Out of Chaos, Ltd. v. AON Corp.*,
 15 F. App'x 137 (4th Cir. 2001) ................................................................. 16

*PBM Nutritionals, LLC v. Lexington Ins. Co.*,
 724 S.E.2d 707 (Va. 2012) ........................................................................... 3

*Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*,
 507 S.E.2d 344 (Va. 1998) .................................................................... 12, 17

*Self Insured Servs. Co. v. Panel Sys., Inc.*,
 352 F. Supp. 3d 540 (E.D. Va. 2018) .................................................... 12, 13

*Sheffer v. Healthcare Servs. Grp., Inc.*,
 2019 WL 5295531 (W.D. Va. Oct. 18, 2019) ..................................... 14, 15

*Silicon Image, Inc. v. Genesis Microchip, Inc.*,
 271 F. Supp. 2d 840 (E.D. Va. 2003) ........................................................ 18

*Smith v. Flagstar Bank, F.S.B.*,
 2015 WL 1221270 (E.D. Va. Mar. 17, 2015) ............................................ 12

*Spiker v. Farmers & Merchants Nat. Bank of Winchester*,
 20 Va. Cir. 504 (1957) ............................................................................... 18

*Synaptek Corp. v. Sentinel Ins. Co.*,
 2018 WL 6042807 (E.D. Va. Nov. 15, 2018), *aff'd*, 771 F. App'x 186 (4th Cir. 2019)... 19, 20

*U.S. ex rel. Frascella v. Oracle Corp.*,
 751 F. Supp. 2d 842 (E.D. Va. 2010) ........................................................ 14

*Van Deusen v. Snead*,
 441 S.E.2d 207 (Va. 1994) ......................................................................... 15

*Ventech Solutions, Inc. v. Lore Sys., Inc.*,
 2018 WL 10501630 (E.D. Va. Apr. 12, 2018) ......................................... 12

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
 579 F. Supp. 2d 334 (E.D.N.Y. 2008) ...................................................... 14

*Wells v. Weston*,
 326 S.E.2d 672 (Va. 1985) ......................................................................... 18

*Wenzel v. Knight*,
 2015 WL 3466863 (E.D. Va. June 1, 2015) .................................... 3, 4, 8, 9

*Wilkins v. United States*,
 2016 WL 2689042 (E.D. Va. May 9, 2016) .............................................. 12

### Rules and Regulations

Rule 9(b) ........................................................................................... 16, 17

Rule 12(b)(6) ........................................................................................ 10

## I.     INTRODUCTION

Plaintiff Brainchild Surgical Devices, LLC's ("**Brainchild**") Opposition to Defendant CPA Global Limited's ("**CPA Global**") Motion to Dismiss ("**Opp.**"), ECF No. 19, still fails to cite a single contractual provision that actually says what they allege the contract required, namely that CPA Global will only charge a "fixed amount per patent renewal plus pass-through costs." Opp. at 2.  Nothing in the two contractual provisions Brainchild relies on, Sections 4 and 5, limits CPA Global to "pass-through" costs; indeed, the phrase "pass-through" or any of its equivalents are nowhere to be found in these contractual provisions.  The contractual provisions cited by Brainchild, along with the Renewal Notices, instead detail how the charges Brainchild agreed to pay cover more than just the underlying costs themselves—*e.g.*, the Funds Management Fee covers "currency exchange/risk exposure, managing global transactions, credit risk, and the financing of renewal payments;" the Country Charge, which is applied according to a set schedule, covers "the infrastructure, CPA Global personnel and third parties (as appropriate) required in order to execute a renewal in a particular jurisdiction;" and the Official Charge covers the amount "in respect of submissions to the relevant registries in each jurisdiction."  Moreover, the Contract says that the Country Charge and Official Charge each "include provision for" funds management when currency conversion is required.  Brainchild cannot simply ignore these agreed-upon provisions or otherwise rewrite them in order to sustain its case here.

This is especially true in light of the Renewal Notices.  CPA Global sent Brainchild Renewal Notices that told Brainchild the amount that CPA Global would charge for its services in advance and offered Brainchild the opportunity to decline them.  Neither Brainchild's Opposition nor its Complaint dispute that these Renewal Notices were part of the Contract, that Brainchild received them, that they specified the prices that CPA Global would charge, that Brainchild elected to proceed with the renewals knowing these specific prices, or that CPA Global charged costs in

accordance with them.  This is critical because Brainchild cannot sustain its breach of contract claim where, as here, it received an estimate for services, chose to proceed with the services on those agreed upon terms, and was ultimately invoiced in accordance with the same.  Simply put, Brainchild was not "overcharged" by 78% as it repeatedly claims; it was charged what CPA Global said it would charge and what Brainchild agreed to pay in the Renewal Notices.  Brainchild's vague allegations that the invoices were "opaque" or "devoid of meaningful breakdown" does not alter that fact or the fact that CPA Global was not contractually obligated to provide any more detail beyond that which it provided before Brainchild decided to proceed with the renewal.

Left without a viable breach of contract claim, Brainchild reaches for other claims that are not actionable where the arms-length relationship between the parties is governed by a contract. Brainchild's good faith and fair dealing claim and its fraud claim (now premised on allegedly opaque invoices) are fundamentally based on the parties' rights and duties under the Contract. Moreover, there are no adequately pleaded facts showing an intent to conceal, fraudulent inducement, or, indeed, the circumstances of any fraudulent statement outside the four corners of the Contract or invoices.  Likewise, Brainchild's unjust enrichment claim is barred by Virginia law because the parties had a valid contract, and Brainchild's unpled suggestion in the alternative that there might not have been a meeting of the minds is untenable.  Finally, Brainchild itself concedes that it cannot state a separate claim for injunctive relief.

Brainchild ends it Opposition with a preemptive request for leave to amend.  But the Contract is the Contract.  It says what it says, and requires what it requires.  That is not going to change with any amendments to the Complaint.  Brainchild's remedies are to try to renegotiate the Contract or leave for one of CPA Global's competitors (as it has already done), not further burden this Court.  Dismissal with prejudice is warranted under these circumstances.

## II.     ARGUMENT

### A.     Brainchild Fails to State a Claim for Breach of Contract

Brainchild alleges a breach of contract for "overcharging . . . in excess of agreed upon rates," "invoicing . . . in an opaque manner," and "concealing both the types of fees and the specific amount of fees it charged."  Compl. ¶ 72.  In its Opposition, Brainchild claims that it relies on Sections 4 and 5 for these allegations.  Sections 4 and 5, however, do not specifically set the aggregate charges Brainchild was to be charged, the format of invoices, or precisely how fees and amounts charged were to be disclosed.  The only aspects of the Contract that detail a specific price are the estimates in the Renewal Notices.  But Brainchild does not (and cannot) allege that the amounts it paid differed from those in the Renewal Notices.

#### 1.     Brainchild Cannot Rewrite the Terms of the Contract

It is a "basic tenet of Virginia law that the courts, when interpreting a contract, 'construe it as written' and do 'not add terms the parties themselves did not include.'"  *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 714 (Va. 2012) (quoting *Landmark HHH, LLC v. Gi Hwa Park*, 671 S.E.2d 143, 147 (Va. 2009)).  Courts cannot "insert by construction, for the benefit of a party, a term not express in the contract."  *Id*. (quotation omitted).  Instead, where "the plain language of the terms of the [contract] make clear that the facts alleged by [the plaintiff] do not constitute a breach," the claim should be dismissed.  *Wenzel v. Knight*, 2015 WL 3466863, at *5 (E.D. Va. June 1, 2015).

##### (a)     Brainchild's Allegations Regarding the Country Charge Are Contrary to the Plain Language of the Contract

Brainchild alleges that the Country Charge reflects "the cost for a local agent as required in some jurisdictions," (Opp. at 3; *see also* Compl. ¶ 31), which is "a publicly available external cost to be passed onto Defendant's customers."  Opp. at 5.  Brainchild also asserts that the Country

Charge "in many instances is zero . . . because there is no Country Charge" in jurisdictions where CPA Global does not have to use a third-party agent.  Opp. at 5.  Tellingly, Brainchild does not quote the actual language of the Contract to support its argument, because no such language exists.

The Renewal Agreement actually defines the Country Charge as a "tariff (which may vary from time to time), a current copy of which is available upon request."  Compl., Ex. A § 5.3.  The Country Charge also "may be subject" to the Funds Management Fee.  *Id*.  The Renewal Notices, which together with the Renewal Agreement form the Contract, *see* Mem. at 14-15, goes on to explain that the Country Charge is set forth in a set schedule:

**Country Charge***
This charge relates to the infrastructure, CPA Global personnel and third parties (as appropriate) required in order to execute a renewal in a particular jurisdiction. CPA Global maintains a schedule of applicable Country Charges (which may be updated from time to time), a current copy of which is available on request.

*Figure 1 - Excerpt from Renewal Notice (Compl., Ex. B) at 3*

This contractual language does not limit the Country Charge to external costs or local agents, just as it does not state there will be no charge applied in countries where a local agent is not required.  Any allegation to the contrary ignores the plain language of the Contract and cannot sustain a claim for breach of contract.  *See Wenzel*, 2015 WL 3466863, at *5.

> **(b)     Brainchild's Allegations Regarding the Funds Management Fee Are Contrary to the Plain Language of the Contract**

Brainchild's assertions regarding the meaning of the Funds Management Fee are equally untethered from the language of the Contract.  Brainchild repeatedly states that the Funds Management Fee is simply a "currency conversion charge."  *See, e.g.*, Opp. at 6 ("is defined as a ***conversion rate*** that 'shall be calculated using our CPA Global rates'") (emphasis added); *see also id*. at 3-4.  Brainchild alleges that the Funds Management Fee only permits charges for the "exchange [of] currencies," which it asserts CPA Global should be able to obtain "at interbank exchange rates or close to interbank exchange rates, meaning they pay, if anything, a small fraction

of one percent of the amount of currency converted in third party fees."  Compl. ¶ 35; *see also*

Opp. at 10 ("these rates must be tied to the prevailing exchange rate").

        But, again, that is not what the Contract says.  The Renewal Agreement actually defines

the Funds Management Fee as follows:

> 5.6   The Parties shall use the Currency (defined in Clause 6.1 of the Operating Procedures) for invoice and payment. If the Official Charge, Country Charge and/or other sums of money require to be converted from one currency into the Currency, such sums or Charges shall be calculated using our CPA Global rates which include provision for funds management e.g. currency exchange/risk exposure, managing global transactions, credit risk and the financing of renewals payments.

*Figure 2 - Excerpt of Renewal Agreement (Compl., Ex. A), § 5.6*

The Renewal Notices also defines the Funds Management Fee:

> \* The Official Charge and Country Charge as well as any other sums of money that may at any time require to be converted from one currency into the currency in which we invoice you will be converted at our rates and are subject to a charge for funds management e.g. managing global transactions, currency risk exposure, credit risk and financing renewal payments.

*Figure 3 - Excerpt from Renewal Notice (Compl., Ex. B) at 3*

        The plain language of the Contract makes clear that the Funds Management Fee is not

calculated using a currency conversion rate—much less the prevailing or interbank exchange

rates—and that its "purpose" is not simply for currency exchange, but rather for the "provision for

funds management e.g. currency exchange/risk exposure, managing global transactions, credit

risk, and the financing of renewal payments."  Compl., Ex. A, § 5.6.  Brainchild's argument

ignores—and asks this Court to ignore—everything after the "e.g."  But that "e.g." cannot be

ignored, because it is part of the agreed-upon terms for the Funds Management Fee under the

Contract, and makes clear that the fee goes well beyond the simple cost of conversion.

- 5 -

Because Brainchild fails to allege that the Funds Management Fee was calculated inconsistently with the actual terms of the Contract, it cannot plead a claim for breach, as numerous cases cited in CPA Global's opening brief recognize. *See* Mem. at 9-11. Brainchild's attempts to distinguish those cases are unavailing. *See* Opp. at 7-10. As Brainchild acknowledges, the contractual provisions at issue in those cases were "explicit[]" and "transparent." *Id.* In other words, the contracts were unambiguous. The same is true here in that the Contract is unambiguous that CPA Global is not limited to passing through a "currency conversion charge" as Brainchild alleges. In addition, as in *MZL Capital Holdings, Inc v. TD Bank, N.A.*, 734 Fed. App'x 101 (3rd. Cir. 2018), the Contract does not require CPA Global "to use a particular exchange rate or disclose its methodology for calculating the 'applicable . . . rate.'" *Id.* at 105.

### (c) The Funds Management Fee Provision Is Not Ambiguous

Brainchild next argues the Funds Management Fee is ambiguous because a "customer" would "reasonably understand" it to "approximate the prevailing exchange rate" and anything more than that renders the term "plainly ambiguous." Opp. at 5. However, the Court must interpret the contract as written and not, as Brainchild asserts, according to the "reasonable expectation" of one of the parties. Opp. at 3-4; *see Bartolomucci v. Fed. Ins. Co.*, 770 S.E.2d 451, 457 n.3 (Va. 2015) ("[Courts] evaluate contracts based on what the instruments actually say, not on what may have been intended."). "[T]he intent of the parties is presumed to be embodied in the contractual terms. If those terms are clear and unambiguous, it is the duty of the court to enforce them." *Foreign Mission Bd. of S. Baptist Convention v. Wade*, 409 S.E.2d 144, 146 (Va. 1991).

"A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Dress v. Cap. One Bank (USA), N.A.*, 849 F. App'x 55, 56 (4th Cir. 2021) (quotation omitted); *see also In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 73 (S.D.N.Y. 2013) ("[Any] confusion among customers, who had assumed that standing

instruction trades were subject to best execution pricing, [] is precisely the resort to expectations unmoored from contractual text that does not render a contract ambiguous").  "Rather, a contract is ambiguous only when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time."  *Dress,* 849 F. App'x at 56 (quotation omitted).

Here, as described above, the plain language of the Contract is clear that the Funds Management Fee is not exclusively a currency exchange rate.  Although calculated using CPA Global's "rates," those "rates" are not currency exchange rates, and instead encompass, by the Contract's terms, "currency exchange/risk exposure, managing global transactions, credit risk, and the financing of renewal payments," among other things.  Compl., Ex. A, § 5.6.  Indeed, there is no currency exchange rate or third-party exchange rate source referenced in the Contract at all.  This fact distinguishes the cases relied upon by Brainchild, all of which involve the interpretation of a contractually-referenced third-party rate that is absent from the Contract here.  *See Hill v. State St. Corp.*, 2011 WL 3420439, at *11 (D. Mass. Aug. 3, 2011) (contractual term provided that pricing was "based on the interbank rate at the time the trade is executed"); *Int'l Union of Operating Engineers, Stationary Engineers Loc. 39 Pension Tr. Fund v. Bank of New York Mellon Corp.*, 2012 WL 476526, at *5-6 (N.D. Cal. Feb. 14, 2012) (contractual term required defendant to provide exchange rates no less favorable than in a "comparable arm's length FX transaction").

Indeed, CPA Global agrees that *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56 (S.D.N.Y. 2013) is instructive:  in that case, the court found the plaintiff had plausibly pled the contract required the defendant to use "best execution pricing" for foreign exchange transactions, which it recognized was "a term commonly used in the securities business" and "regularly . . . recognized" by courts, and required the plaintiff be given "the best possible

price under the circumstances." *Id.* at 76.  Such an industry-standard term is entirely absent from the Contract here and has no application to a contractual term applying a Funds Management Fee based on "our CPA Global rates."  Compl., Ex. A, § 5.6.

### 2. Brainchild Concedes It Does Not State a Claim for Breach of Contract Based on "Opaque Invoices"

Brainchild's Opposition concedes that it cannot state a claim based on its allegations that CPA Global breached the Contract by "invoicing Plaintiff and the Class in an opaque manner," (Compl. ¶ 72), as it does not even attempt to point to any contractual obligation to provide more detailed invoices.  *See* Opp. at 11 ("to the extent that no provision of the Agreement requires Defendant to provide itemized invoices"); *see also Wenzel*, 2015 WL 3466863, at *4 ("the complaint must state sufficient facts showing . . . a legally enforceable obligation of a defendant to a plaintiff") (quotation omitted).  Instead, Brainchild changes course to argue that CPA Global "misunderstands" it allegations, which merely described a "practice" that was "in service of its breach of Sections 4 and 5 of the Agreement by overcharging Brainchild and the Class."  Opp. at 11.  But acting "in service" of another breach is, by definition, not a stand-alone breach.

### 3. Brainchild Ignores That It Agreed to Pay the Charges in the Renewal Notices

Brainchild's core breach of contract allegation is that CPA Global breached the Contract by "overcharging . . . in excess of agreed upon rates" and "concealing . . . the specific amount of fees it charged."  Compl. ¶ 72.  Brainchild's Complaint and its Opposition, however, all but ignore the Renewal Notices that, far from "concealing," actually set forth the specific, agreed-upon amount of fees to be charged.  Brainchild does not dispute that the Renewal Notices are incorporated into the Contract.  *See* Mem. at 14-15.  Brainchild also does not dispute that, per the plain language of the Contract, (1) the Renewal Notices "provide a specific estimated price for each renewal" that Brainchild would pay, as contemplated by the Renewal Agreement; (2)

Brainchild could decline to proceed with a renewal upon receipt of the Renewal Notice, which would result in no charge for that renewal; (3) Brainchild proceeded with the renewals which constituted its "acceptance of, and agreement to pay such charges;" and (4) the total amount Brainchild paid was lower than the amounts reflected in the Renewal Notices. *See* Compl., Ex. A, § 5.7; *id*. Ex. B, § 5.6; Mem. at 15-16.

Brainchild thus does not and cannot claim that it was overcharged as to the agreed-upon price reflected in the Renewal Notices at all, let alone by the 78% it repeatedly claims. Therefore, it does not and cannot set forth a claim for breach of contract. *See Wenzel*, 2015 WL 3466863, at *7 (dismissing breach of contract claim where "the agreement identifies th[e] amount" of $11 per share as the fair market value, despite plaintiff's allegation that "the underlying value of [the company] did not support an $11.00 per share valuation"); *Maor v. Dollar Thrifty Automotive Group, Inc.*, 2018 WL 4698512, at *3 (S.D. Fla. 2018) ("Because it is clear that Plaintiff was charged the precise amount he agreed to under the contract according to the contract's express terms, Defendants' conduct fully complied with the terms of the contract and there can be no breach.").

Instead, Brainchild claims that the Renewal Notices are "wholly irrelevant," because the "estimated price" in the Renewal Notices should have "include[d] a breakdown of the various components of that price." Opp. at 11. But, once again, Brainchild does not point to any such requirement in the Contract and, in fact, concedes it cannot, *see supra* at II(A)(2). That is because the Contract says the exact opposite: the Renewal Agreement states that Renewal Notices would provide CPA Global's "best estimate of the total ***aggregate*** Charges." Compl., Ex. A, § 5.7 (emphasis added). If Brainchild wanted additional detail in its Renewal Notice, it could have negotiated to add such a requirement. Or it could have just taken up CPA Global's offer to provide

- 9 -

additional information if Brainchild had any question about the charges.  *See* Compl., Ex. B at 3

("For more information [regarding charges] please . . . contact us."); *see also id*. at Ex. A § 5.3

(providing that "a current copy of [the Country Charge tariff] is available upon request").  It does

not plead any such attempt, nor can it.

Regardless, as Brainchild concedes, it was aware of and accepted the core terms of the

parties' agreement:  the specific price to be paid in exchange for each of the patent renewals.

Brainchild thus cannot plead a claim for breach of contract on the grounds that CPA Global

"overcharge[ed] Plaintiff . . . in excess of agreed upon rates," and it certainly cannot plead that

CPA Global "conceal[ed] . . . the specific amount of fees it charged Plaintiff."  Compl. ¶ 72.

### B.    Brainchild's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Duplicative of Its Breach of Contract Claim

Brainchild argues that its good faith and fair dealing claim is separate from its breach of

contract claim because CPA Global "acted 'dishonestly' in two ways:  by overcharging customers

in violation of Sections 4 and 5 of the Agreement, and by using opaque invoices to hide the

overcharges."  Opp. at 12.  Brainchild also asserts that CPA Global "acted 'unfairly' in the exercise

of its discretionary performance of the Agreement by overcharging customers and using opaque

invoices to hide the overcharges."  *Id*. at 13.  But those allegations relate to whether CPA Global

complied with the express provisions in the Contract regarding pricing and invoicing.  Brainchild's

Opposition fails to identify any independent, separate factual allegations about conduct outside of

the Contract and CPA Global's performance thereunder to support this claim.  Accordingly, it

must be dismissed.  *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255

(4th Cir. 2009) ("[L]egal conclusions, elements of a cause of action, and bare assertions devoid of

further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

Brainchild's allegations here stand in contrast to the two cases it cites in its Opposition, both of which found the plaintiff had adequately pled a breach of the implied covenant.   In *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009), the plaintiff pleaded a detailed factual history of payments and medical exams that supported the plaintiff's claim that the defendant had been "actually dishonest" in exercising its rights under a space flight contract by "purposefully fail[ing] to provide him with a space flight and purposefully fail[ing] to inform him of the high likelihood of medical disqualification." *Id*. at 446–48, 450–51.   Likewise in *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460 (E.D. Va. 2013), the plaintiff included a detailed factual history of its submission of financial information in support of the plaintiff's claim that the defendant "acted 'in bad faith and against usual and prudent business and banking practices' in determining that a financial statement contained a misrepresentation or omission." *Id*. at 462–63, 469.   Brainchild's Complaint contains no similar litany of conduct alleging dishonesty or unfairness, just bare assertions.

Because Brainchild does not include any actionable allegations separate from its breach of contract claim, the claim must be dismissed as duplicative. *See JTH Tax, Inc. v. Aime*, 984 F.3d 284, 294 (4th Cir. 2021) (reversing award of separate damages for breach of contract and breach of the implied covenant because "Virginia law does not recognize an independent cause of action based on the implied covenant"); *see also Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *5 (E.D. Va. Aug. 14, 2019) (dismissing breach of contract claim and good faith and fair dealing claim where defendant properly "exercised its contractual *right*");[1] *Dress*, 2019 WL 3451304, at

---

[1]  Brainchild faults CPA Global's citation to the *Lambert* case, because that case does not mention the word "duplicative."  Opp. at 14.  The lack of the word "duplicative" does not change the court's finding that both claims "must . . . be dismissed for similar reasons," because whether analyzed as a breach of contract or of the implied covenant, the defendant had properly "exercised its contractual *right* to charge Plaintiff a nonsufficient fund fee."  *Lambert*, 2019 WL 3843064, at *5.

*6 (same); *Wilkins v. United States*, 2016 WL 2689042, at *4 (E.D. Va. May 9, 2016) (same); *Jackson v. Ocwen Loan Servicing*, 2016 WL 1337263, at *12 (E.D. Va. Mar. 31, 2016) (same). Otherwise, Brainchild's good faith and fair dealing claim is nothing more than an impermissible "vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ventech Solutions, Inc. v. Lore Sys., Inc.*, 2018 WL 10501630, at *5 (E.D. Va. Apr. 12, 2018) (quotation omitted); *see also Smith v. Flagstar Bank, F.S.B.*, 2015 WL 1221270, at *6 (E.D. Va. Mar. 17, 2015) ("Plaintiff cannot employ the implied duty of good faith and fair dealing to create obligations . . . that were not present in the underlying contracts.").

### C.     Brainchild Fails to State a Claim for Fraudulent Concealment

#### 1.     Brainchild Cannot State a Claim for Fraud Because Its Allegations Arise Entirely From the Contract

Alleged misrepresentations or omissions arising from a duty owed under the Contract are not independently actionable as fraud. *See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc*., 507 S.E.2d 344, 347–48 (Va. 1998) (upholding dismissal of fraud claims because alleged misrepresentations were "related to a duty or an obligation that was specifically required" by the contract). Brainchild does not dispute this basic principle, but instead argues that its fraud claim is "grounded on duties independent of the Agreement." Opp. at 16.

Brainchild, however, does not actually identify any such duties independent of the parties' Contract. The only duties it alleges were violated are CPA Global's duty "not to overcharge customers" and duty not to "us[e] opaque invoices to hide its overcharge scheme." *See id*. at 15–16. But whether CPA Global overcharged customers can only be determined by looking at whether it complied with pricing provisions in the Contract and CPA Global's duties with regard to invoicing can only arise from the Contract. Thus, these rights and obligations arise solely from the parties' Contract and Brainchild cannot recover in tort. *See Self Insured Servs. Co. v. Panel*

*Sys., Inc.*, 352 F. Supp. 3d 540, 555 (E.D. Va. 2018) (plaintiff may not recover in tort if the "duty tortiously or negligently breached . . . exist[s] between the parties solely by virtue of [a] contract" rather than an independent common law duty) (quoting *Foreign Mission Bd.*, 409 S.E.2d at 148).

None of the cases Brainchild cites undermine this core distinction. In arguing that CPA Global "was under a duty independent of the Agreement not to overcharge customers because '[t]he duty not to defraud is owed by everyone to everyone,'" (Opp. at 15), Brainchild misconstrues *Hewlette v. Hovis,* 318 F. Supp. 2d 332 (E.D. Va. 2004). As the *Hewlette* court recognized, the issue there was whether "the attorney breache[d] a duty that is independent of his . . . status as attorney," which the court found was the case in light of the attorney's false statements about his entitlement to retain the plaintiff's settlement funds. *Hewlette*, 318 F. Supp. 2d at 336. Thus it remains the case that "the operative question under Virginia law is whether the fraudulent representations arose out of the contract or constituted an independent tortious breach of a common law duty." *Kurlander v. Kaplan*, 2020 WL 9454964, at *6 (M.D. Fla. Aug. 5, 2020) (discussing *Hewlette* and citing *Dunn Const. Co. v. Cloney*, 628 S.E.2d 943, 947 (Va. 2009)).[2] Here, there is no independent common law duty owed to Brainchild outside the Contract and thus, no claim for fraud can be sustained.

None of the other cases Brainchild cites are analogous to the situation here. *Edwards v. Puffenbarger*, 835 F.2d 874 (4th Cir. 1987) is an over thirty-year old unpublished opinion that has not been cited by any authority, in which the plaintiff brought only a fraud claim and for which

---

[2]  In *Kurlander*, the court dismissed the plaintiff's fraud claim because the conduct "arose within the scope" of the attorney-client contract, rejecting the argument that *Hewlette's* statement that "[t]he duty not to defraud is owed by everyone to everyone" means that even conduct governed by a contract is actionable as fraud. 2020 WL 9454964, at *6–7. As the court explained, "Plaintiffs' position would make all fraudulent conduct of an attorney actionable regardless of whether such conduct was governed by the parameters of the contractual attorney-client relationship." *Id*. at *6.

the Fourth Circuit only addressed whether the district court had properly calculated damages.  *Id*. at *2.  There is no discussion concerning how the fraud claim might interact with a potential breach of contract claim arising from the same conduct.  *See generally id*.  The other two cases on which Brainchild relies are equally inapplicable, as the fraud claims at issue relied on affirmative statements made by the defendants outside of the parties' contract.  *See U.S. ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 855 (E.D. Va. 2010) (plaintiff's fraud claims were based on "multiple affirmative false or fraudulent statements related to its discounting policies and practices" that "were made with the intent to induce GSA to enter into contract modifications and to continue to accept the discounts as originally disclosed"); *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 351 (E.D.N.Y. 2008) (plaintiff adequately pled a claim for fraud under New York state law based on "the misleading nature of the defendants' minimum fee fliers whose advertised minimum fees" did not reveal automatic price hikes and certain other hidden fees). Moreover, in *Watts*, the defendants "utilized various means to prevent plaintiffs from gathering facts that could support more particularized allegations of fraud."  579 F. Supp. 2d at 351.  Here, Brainchild does not even attempt to allege ***any*** conduct or representations made by CPA Global outside of the terms of the Contract and the invoices.  Nor does Brainchild allege CPA Global undertook any action to prevent Brainchild from gathering facts to supports it fraud allegations— to the contrary, CPA Global explicitly invites its customers to "contact [CPA Global]" for "more information" about the charges.  Compl., Ex. B at 3; Ex. C at 2.

### 2.     Brainchild Fails to Allege an Intent to Conceal

To state a claim for fraudulent concealment, there must be "an allegation . . . of a knowing and a deliberate decision not to disclose a material fact."  *Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998).  A plaintiff therefore must allege an "intent to conceal a material fact."  *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999); *Sheffer v. Healthcare Servs. Grp.,*

*Inc.*, 2019 WL 5295531, at *4 (W.D. Va. Oct. 18, 2019) (dismissing claim of fraudulent concealment because plaintiff "does not point to any 'word[s] or conduct' by a particular person that were intended to 'prevent [him] from learning the truth'") (quoting *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994)).   Moreover, a plaintiff must allege that the defendant "knew that [p]laintiffs were acting upon the assumption that the facts did not exist."   *Girgis v. Salient Sols., Inc.*, 2012 WL 2792157, at *15 (E.D. Va. July 9, 2012).

As described in CPA Global's opening brief, Brainchild does not point to any words or conduct that were intended to prevent it from learning the truth, does not allege that GPA Global knew that Brainchild was relying on any particular facts, and does not identify any material facts that CPA Global allegedly withheld.   *See* Mem. at 21-22 & n.9.   Brainchild attempts to save its claim by citing to *Morrison v. Wells Fargo Bank, N.A.,* 30 F. Supp. 3d 449 (E.D. Va. 2014) to argue that CPA Global's intent can be "reasonably infer[ed] from" CPA Global's invoices.   Opp. at 17.   However, in *Morrison*, the court was able to draw a "reasonable inference" of intent based on specific misrepresentations made by the defendant's employee over the phone "coupled with" a letter sent by defendant, both of which indicated the defendant would not foreclose on the plaintiff's property and both of which were made within one week of the defendant foreclosing on the property.   30 F. Supp. 3d at 457.   The mere fact that CPA Global issued invoices in compliance with provisions of the parties' Contract comes nowhere close to supporting a similar plausible inference of an intent to conceal.

Brainchild's allegation of fraudulent inducement fails for a similar reason.   Just as it did for intentional concealment, Brainchild points back to its threadbare, conclusory allegation from the Complaint that CPA Global's "misrepresentations and acts of intentional concealment induced Plaintiff and the other members of the Class to enter into or to renew renewal services agreements

that they would not have had the true facts been known to them." Opp. at 17 (quoting Compl. ¶ 84) (emphasis omitted). Brainchild sets forth no specific facts supporting this conclusory allegation, such as what the misrepresentations were, what was concealed, or how it was misrepresented or concealed.

Moreover, Brainchild does not mention either in its Complaint or its Opposition **any** pre-contractual conduct, as is required to plead a fraudulent inducement claim. *See Bauer-Robertson v. Shiva Fin., LLC*, 2021 WL 1323403, at *8 (E.D. Va. Apr. 8, 2021) ("[A] showing of fraudulent inducement requires evidence of fraud either before or at the time of contracting," and it must be "apart from the mere breach of a contractual obligation."). To the contrary, the only allegedly misleading statements Brainchild identifies is the invoice attached as Exhibit C to the Complaint, (Opp. at 17-18), which of course was provided well after the parties entered into their agreement. *See Cty. of Grayson v. RA-Tech Servs*., 2014 WL 2257155, at *3 (W.D. Va. May 29, 2014), *aff'd*, *Cty. of Grayson v. Spane*, 609 F. App'x 150 (4th Cir. 2015) (dismissing fraud claim with prejudice where plaintiffs' "factual allegations concern actions taken well after contract formation and fail to 'demonstrate the defendant[s'] intent (at the time the promises [were] made) never to abide by the terms of the contract'") (quoting *Out of Chaos, Ltd. v. AON Corp.*, 15 F. App'x 137, 142 (4th Cir. 2001)) (alterations in original). As the court in *RA-Tech Services* recognized, if allegations such as Brainchild's were sufficient to state a claim for fraud, "every claim for breach of contract could be converted into a tort claim for fraud in the inducement, in direct conflict with Virginia's economic loss doctrine." *Id*.

### 3. Brainchild Fails to Allege With Particularity the Circumstances of Any Misrepresentation or Actionable Omission as Required by Rule 9(b)

Brainchild does not dispute that its fraud claim must satisfy the heightened pleading requirements of Rule 9(b). *See* Opp. at 16, 18. "The heightened pleading standard for fraud claims

requires a party alleging fraud to state with particularity the time, place and contents of the fraud as well as who committed the misrepresentation and what he or she obtained." *Morrison*, 30 F. Supp. 3d at 457. As discussed in CPA Global's opening brief, however, the Complaint fails to meet this standard because it does not identify the "who, what, where, when, and how" of CPA Global's purportedly false statements. *See* Mem. at 22-23.

In response, Brainchild's Opposition only identifies the invoice attached as Exhibit C to the Complaint, which Brainchild claims is fraudulent because it does not "provide any price breakdown for the costs of [each] renewal for any of those patent"—even though, as Brainchild concedes, *see supra* at II(A)(2), such a breakdown is not required by the Contract—and "provide[s] the date on which material facts were concealed, the manner in which they were concealed, the party concealing such facts, and the surrounding circumstances that made Defendant's statements and omissions misleading." Opp. at 17-18. The mere issuance of invoices, however, cannot serve as the "circumstances constituting fraud" under Rule 9(b) because, as explained above, performing an obligation required by a contract cannot serve as the basis of a fraud claim. *See Richmond Metro. Auth.*, 507 S.E.2d at 347–48. And even if the invoices could supply the "circumstances constituting fraud," CPA Global's duties in issuing the invoices fall squarely within the performance of the Contract. Thus, even assuming the invoices were not in compliance with the Contract's requirements, a fraud claim cannot stand where the alleged fraudulent representations "arose solely by virtue" of duties required by contract. *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 294 (Va. 2007).

### D. Brainchild's Unjust Enrichment Claim Is Foreclosed by Virginia Law

Under Virginia law, "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018); *see also Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926

- 17 -

(4th Cir. 1988) (affirming dismissal of unjust enrichment claim where there was an express contract between the parties).  Brainchild argues that its unjust enrichment claim should be allowed to proceed because it "alternatively pleads a lack of meeting of the minds."  Opp. at 18.  As an initial matter, the Complaint is devoid of any such allegation or claim regarding an alleged lack of meeting of the minds.  In any event, Brainchild cannot plead there was no meeting of the minds where, as here, the parties have fully performed under the contract.  *Spiker v. Farmers & Merchants Nat. Bank of Winchester*, 20 Va. Cir. 504 (1957) ("Even though there might have been no actual meeting of the minds" a contract is not "void . . . for uncertainty where the promisor's undertaking has been fully performed.").  There are no allegations that CPA Global did not renew the patents it was supposed to or that Brainchild did not pay the amounts it was invoiced.

Furthermore, any asserted misunderstanding "must have a reasonable basis in the contractual language" and "[a] court need not be swayed by, or meticulously probe on its own initiative, a conclusory declaration that a party . . . believed that the basis for a[n] . . . agreement was something other than that recited in the agreement itself."  *Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840, 852 (E.D. Va. 2003), *aff'd,* 176 F. App'x 109 (Fed. Cir. 2006); *see also Wells v. Weston*, 326 S.E.2d 672, 676 (Va. 1985) (a court "must examine [the parties'] outward expression rather than [their] secret, unexpressed intention").  Finally, a contract can be found non-existent "only when the misunderstanding goes to conflicting and irreconcilable meanings of a *material* term."  *Silicon Image, Inc.*, 271 F. Supp. at 852 (quotation omitted).

Nowhere in its Complaint or Opposition does Brainchild include allegations sufficient to meet these requirements.  Brainchild's Opposition suggests that the Court could find that the Contract "is silent as to . . . the overcharging scheme and the practice of issuing opaque invoices to hide the overcharges."  Opp. at 18-19.  But that suggestion is at odds with the Contract itself,

which includes provisions describing each of the four pricing components, invoicing requirements, and setting the specific agreed-upon price.  Brainchild otherwise does not point to any statement or act outside the Contract that calls into doubt the mutual assent of the parties.  In short, Brainchild has not pled in the alternative that there was no meeting of the minds and any amendment to plead there was no meeting of the minds would be futile.

### E.    Brainchild Concedes It Cannot Bring a Claim for Injunctive Relief

Under Virginia law, it is well established that "injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Multi-Hous. Tax Credit Partners XXX v. Alexander Dairy Assocs., LLC*, 2020 WL 7419218, at *6 (E.D. Va. Dec. 18, 2020) (quoting *Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016)) (dismissing claim for injunctive relief with prejudice, as "no new allegations can save" a remedy improperly pled as a cause of action).  In its opposition brief, Brainchild concedes that it "seeks injunctive relief as a remedy," (Opp. at 19), and thus, its claim should be dismissed.

### F.    The Complaint Should Be Dismissed With Prejudice

A "district court may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'"  *Glaser v. Enzo Biochem, Inc.*, 126 F. App'x 593, 602 (4th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Morefield v. Bailey*, 959 F. Supp. 2d 887, 907 (E.D. Va. 2013) ("[W]here amendment is futile, courts have exercised their discretion to deny leave to amend and dismiss with prejudice.").  Moreover, contrary to Brainchild's assertion, a court is not required to grant a plaintiff leave to amend before dismissing a case with prejudice.  *See, e.g.*, *Synaptek Corp. v. Sentinel Ins. Co.*, 2018 WL 6042807, at *3 (E.D. Va. Nov. 15, 2018), *aff'd*, 771 F. App'x 186 (4th Cir. 2019) (dismissing initial complaint

with prejudice); *Lambert*, 2019 WL 3843064, at *7 (same); *Fiorani v. Navy Fed. Credit Union*, 2015 WL 11112156, at *2 (E.D. Va. Apr. 14, 2015), *aff'd,* 613 F. App'x 220 (4th Cir. 2015) (same).  "[I]f a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment of the complaint would be futile."  *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

Here, granting a motion to amend would be futile.  The only basis for Brainchild's claims are the Contract and the invoices attached to the Complaint.  Brainchild includes essentially no factual allegations outside those documents in either its Complaint or its Opposition.  Indeed, while its Opposition asserts that amendment would allow it "to assert the theories stated herein," (Opp. at 20), the theories asserted in its Opposition are already reflected in the Complaint or untenable (as in the case of its "meeting of the minds" theory discussed at Section II(D)), and it otherwise provides no explanation as to how an amended complaint based on the same contract could survive a second motion to dismiss.

In sum, the unambiguous language in the Contract bars each of Brainchild's claims, rendering any amendment futile.  *See, e.g.*, *Synaptek Corp.*, 2018 WL 6042807, at *2-3 (dismissing initial complaint with prejudice where amendment would be futile in light of the "clear and unambiguous language" of the contract); *Lambert*, 2019 WL 3843064, at *5 (same); *Dress*, 2019 WL 3451304, at *6-7 (dismissing with prejudice where "the customer agreements establish a simple, unambiguous rule" that barred breach of contract, good faith and fair dealing, unfair competition, and fraud claims).  Accordingly, the Complaint should be dismissed with prejudice.

## III.   CONCLUSION

For the foregoing reasons, CPA Global respectfully requests that the Court grant its motion to dismiss, and dismiss the Complaint with prejudice.

Dated: September 1, 2021                    Respectfully submitted,


                                            */s/ Jared W. Newton*
                                            QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
                                            Jared W. Newton, VSB #80746
                                            Meghan M. McCaffrey (*pro hac vice*)
                                            J. Matthew Hamann (*pro hac vice*)


                                            1300 I Street, NW, Suite 900
                                            Washington, D.C. 20005
                                            Phone: (202) 538-8000
                                            Fax: (202) 538-8100
                                            jarednewton@quinnemanuel.com
                                            meghanmccaffrey@quinnemanuel.com
                                            matthewhamann@quinnemanuel.com


                                            *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the First day of September, 2021, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following parties:

BROWN NERI SMITH & KHAN, LLP
Geoffrey A. Neri, Esq, VSB No. 72219
Ethan J. Brown, Esq. (*pro hac vice* pending)
Ryan Abbott, MD, PhD, Esq. (*pro hac vice* pending)
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
Geoff@bnsklaw.com
Ethan@bnsklaw.com
Ryan@bnsklaw.com

*Counsel for Plaintiff and the Proposed Class*

  */s/ Jared W. Newton*
_____
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Jared W. Newton, VSB #80746

1300 I Street, NW, Suite 900
Washington, D.C. 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
jarednewton@quinnemanuel.com