**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BRAINCHILD SURGICAL DEVICES, LLC, a New York limited liability company, on behalf of themselves and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CPA GLOBAL LIMITED a foreign entity formed under the laws of the Island of Jersey, Channel Islands,<br><br>Defendant. | Case No. 1:21-cv-00554-RDA-JFA |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant CPA Global Limited ("**CPA Global**"), by and through its counsel, submits this Answer and Affirmative Defenses to the First Amended Class Action Complaint ("**Amended Complaint**") (Dkt. 23) filed by Plaintiff Brainchild Surgical Devices, LLC's ("**Brainchild**" or "**Plaintiff**").

## NATURE OF THE ACTION

1.     Brainchild is a medical device company. Brainchild holds United States and foreign patents and patent applications as well as registered designs (the "Patents"). To maintain the registration of these Patents, Brainchild must pay maintenance fees to offices in each jurisdiction where the Patents are registered, or in some cases, pending.

**RESPONSE TO PARAGRAPH NO. 1:**

**CPA Global is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations and, thus, CPA Global denies these allegations.**

2.      To manage these payments, Brainchild entered into a renewal services agreement with CPA (the "Agreement"). The Agreement is attached as <u>Exhibit A.</u>

**RESPONSE TO PARAGRAPH NO. 2:**

**CPA Global admits that it entered into a renewal services agreement with Brainchild, which is attached as Exhibit A to the Amended Complaint. CPA Global denies the remaining allegations in this paragraph because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.**

3.      Under the Agreement, CPA agreed to charge Brainchild a fixed fee per payment in addition to its actual costs of making payments.

**RESPONSE TO PARAGRAPH NO. 3:**

**CPA Global admits that it charged a fixed fee per payment in addition to other charges that are described in the contract. CPA Global denies the remaining allegations in this paragraph.**

4.      However, CPA substantially overcharged Brainchild in violation of the Agreement.

**RESPONSE TO PARAGRAPH NO. 4:**

**Denied.**

5.      To hide this overcharging, CPA issued opaque invoices to Brainchild that are devoid of any meaningful breakdown. This made it difficult for Brainchild to determine the actual costs CPA incurred in making payments, and thus difficult to tell if Brainchild was being overcharged.

**RESPONSE TO PARAGRAPH NO. 5:**

**Denied.**

6.     Defendant uses similar contracts and pricing structures for all or nearly all of its clients. On information and belief, CPA overcharges its clients according to a deliberate and systematic scheme.

**RESPONSE TO PARAGRAPH NO. 6:**

**Denied.**

7.     With respect to CPA's clients based in the United States, the overcharging only occurs with respect to fees due in foreign jurisdictions. In other words, for US-based clients there is no overcharge for US renewals, only foreign ones.

**RESPONSE TO PARAGRAPH NO. 7:**

**Denied.**

8.     CPA was previously sued in a class action lawsuit in this District for essentially the same fraudulent overbilling practices. On October 6, 2017, the Court approved a settlement of $5.6 million that went to then current class members.

**RESPONSE TO PARAGRAPH NO. 8:**

**CPA Global admits that a purported class action lawsuit was filed against CPA Global in the case *Run Them Sweet, LLC v. CPA Global Limited*, Case No. 1:16-01347-TSE-TCB (E.D. Va.) and that the court entered a Final Settlement Order on October 6, 2017 that created a settlement fund of $5.6 million.  CPA Global denies the remaining allegations in this paragraph.**

9.     Despite that settlement, CPA has continued the same overbilling practices.

**RESPONSE TO PARAGRAPH NO. 9:**

**Denied.**

10.      Brainchild brings this class action lawsuit on behalf of all Defendants' U.S. clients who have been injured by Defendants' systematic overbilling practices. Plaintiff seeks classwide damages, equitable relief, and injunctive relief.

**RESPONSE TO PARAGRAPH NO. 10:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because at least one Plaintiff or class member is from a different state than at least one Defendant, there are more than 100 members of the class and the aggregate amount in controversy exceeds $5,000,000, exclusive of attorneys' fees, interest, and costs.

**RESPONSE TO PARAGRAPH NO. 11:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

12.      Defendant is subject to personal jurisdiction because CPA conducts substantial business in the Commonwealth of Virginia such that it has significant, pervasive and substantial contacts with the Commonwealth of Virginia.

**RESPONSE TO PARAGRAPH NO. 12:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and pursuant to a choice of venue clause. Specifically, Plaintiff's contract, and the contracts of many class members, contains a Virginia choice of venue clause and a Virginia choice of law clause.

**RESPONSE TO PARAGRAPH NO. 13:**

**CPA Global admits that its contract with Brainchild contains a Virginia choice of venue and a Virginia choice of law clause.  The remaining allegations in this paragraph purport to make legal statements that do not require a response, and to the extent they contain any factual allegations, CPA Global denies them.**

## PARTIES

14.     Brainchild is a limited liability company duly organized under the laws of the State of New York, having its headquarters and principal place of business in Brooklyn, New York.

**RESPONSE TO PARAGRAPH NO. 14:**

**CPA Global is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations and, thus, CPA Global denies these allegations.**

15.     Defendant CPA Global Limited is a foreign entity organized under the laws of the island of Jersey, Channel Islands, with its headquarters and principal place of business located on the island of Jersey, Channel Islands. Defendant transacts business in the Commonwealth of Virginia by offering for sale and selling its services to customers in Virginia and in this District.

**RESPONSE TO PARAGRAPH NO. 15:**

**Admitted.**

## FACTUAL ALLEGATIONS

16.     Plaintiff Brainchild is an American medical device company. Brainchild owns issued patents (which protect a new invention) and/or patent applications as well as registered

designs (which protect the appearance of a product) in various jurisdictions around the world (collectively, the "Patents"). To maintain these Patents, Brainchild must pay renewal fees (also called maintenance or annuity fees) to offices in jurisdictions where the Patents are pending or issued.

## RESPONSE TO PARAGRAPH NO. 16:

**CPA Global is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations and, thus, CPA Global denies these allegations.**

17.     Such renewals require the payment of certain fees to offices in each jurisdiction in which Plaintiff has Patents. Timely renewal in each jurisdiction is vital because Patents are lost or abandoned if not properly renewed.

## RESPONSE TO PARAGRAPH NO. 17:

**Admitted.**

18.     CPA is a large, multinational company with offices around the world. CPA advertises that it services 90 percent of the world's largest patent filers, has over 12,000 customers and partners, more than 50 years of experience, and more than 3000 people working for the company.[1]

## RESPONSE TO PARAGRAPH NO. 18:

**CPA Global admits that it is a multinational company with offices around the world and that as of April 26, 2021, CPA Global advertised that it services 90 percent of the world's largest patent filers, has over 12,000 customers and partners, more than 50 years of**

---

[1]     CPA website homepage. Available at: https://www.cpaglobal.com/ (accessed April 26, 2021).

experience, and more than 3000 people working for the company.  CPA Global denies the remaining allegations in this paragraph.

19.     CPA was acquired by Clarivate Plc on October 1, 2020 for almost $9 billion. According to Clarivate's most recent 10-K filing, "we acquired 100% of the assets, liabilities and equity interests of CPA Global, a global leader in intellectual property software and tech enabled services. Clarivate acquired all of the outstanding shares of CPA Global in a cash and stock transaction. The aggregate consideration in connection with the closing of the CPA Global acquisition was $8,740,989[,000]..."[2]

**RESPONSE TO PARAGRAPH NO. 19:**

**Admitted.**

20.     On information and belief, the charges to CPA clients are set by a pricing committee in the Isle of Jersey.

**RESPONSE TO PARAGRAPH NO. 20:**

**Denied.**

21.     CPA's standard policies for billing clients are unlawful.

**RESPONSE TO PARAGRAPH NO. 21:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

---

[2]     Clarivate Plc 10-K filing for the fiscal year ended December 31, 2020. Available at: https://d18rn0p25nwr6d.cloudfront.net/CIK-0001764046/f8ca4e31-2f48-4ff6-a632-e63df261efbd.pdf (accessed April 26, 2021).

**CPA's Standard Contract Terms**

22.      Brainchild entered into the Renewal Service Agreement ("Agreement") with CPA

on April 24, 2018.

**RESPONSE TO PARAGRAPH NO. 22:**

      **Admitted.**

23.      The terms of the Agreement are standard for CPA's clients.

**RESPONSE TO PARAGRAPH NO. 23:**

      **Denied.**

24.      The Agreement sets forth the terms on which CPA agreed to renew Brainchild's

patents.

Section 4 of the Agreement ("Service Charge"), sets forth in Section 4.1 that:

> We will charge you USD **200** for each renewal (the "**Service Charge**"). We will
> give you not less than 6 months' notice of any increase in our Service Charge.
> Additional charges are described in Section 5 of the Terms and Conditions of
> Supply attached hereto.

**RESPONSE TO PARAGRAPH NO. 24:**

      **Admitted.**

25.      Clause 5 ("Charges") of the "Terms and Conditions of Supply of CPA Global

Limited", which are part of the Agreement, states in Clause 5.2 that: "You acknowledge that we

will charge a Service Charge for the Services calculated at the rate quoted in this Agreement."

**RESPONSE TO PARAGRAPH NO. 25:**

      **Admitted.**

26.     Clause 5.2 sets forth Brainchild's understanding of the service agreement, as well as what a reasonable party would understand to be the basis of CPA's service agreement. Namely, that CPA negotiates with a client for a particular service fee, and that is what the client is paying CPA in return for its services.

**RESPONSE TO PARAGRAPH NO. 26:**

    **Denied.**

27.     The Service Charge was agreed to be the consideration due to CPA for its services. The rest of the charges were agreed to be external costs passed on to clients by CPA.

**RESPONSE TO PARAGRAPH NO. 27:**

    **Denied.**

28.     Clause 5.3 additionally provides, "You shall also pay as Charges to us an amount comprising our estimate changes, as at the time of a Renewal Notice, in respect of submissions to the relevant registries in each Jurisdiction ("Official Charge") which vary from time to time..."

**RESPONSE TO PARAGRAPH NO. 28:**

    **CPA Global denies the allegations in this paragraph except that CPA Global admits that Clause 5.3 states, in part, "You shall also pay as Charges to us an amount comprising our *estimated charges*, as at the time of a Renewal Notice, in respect of submissions to the relevant registries in each Jurisdiction ("Official Charge") which vary from time to time..." (emphasis added).**

29.     The Official Charge refers to the actual amount paid by CPA to offices to renew a Patent. These amounts are publicly disclosed by offices. For example, the first renewal fee for a patent in the United States is $1,000 (in the case of a "small entity"), and this amount needs to be

paid to the US Patent and Trademark Office ("USPTO"). Clients can either directly pay, or pay via a service provider like CPA, this fee through an online portal operated by USPTO.

**RESPONSE TO PARAGRAPH NO. 29:**

**CPA Global denies the allegations in this paragraph, except that CPA Global admits that the first renewal fee for a patent in the United States was $1,000 (in the case of a "small entity") at the time the Agreement was in effect, and admits that patent holders can pay this fee directly or via a service provider like CPA Global.**

30.     Clause 5.3 further provides, "You shall also pay ... as applicable, a **Country Charge**, which is set out in a tariff (which may vary from time to time), a current copy of which is available upon request..."

**RESPONSE TO PARAGRAPH NO. 30:**

**CPA Global denies the allegations in this paragraph except that CPA Global admits that Clause 5.3 states, in part, "You shall also pay . . . where applicable, a Country Charge, which is set out in a tariff (which may vary from time to time), a current copy of which is available upon request. . . ."**

31.     The Country Charge refers to the fact that, in some jurisdictions, a local agent is required to make payment to a patent office (for example, a patent agent registered in the domestic country of a particular office). This is not the case with offices such as USPTO, the European Patent Office (EPO), or the United Kingdom Intellectual Property Office (UKIPO), but it is a requirement of some offices around the world.

**RESPONSE TO PARAGRAPH NO. 31:**

**Denied.**

32.     It may be the case that in some jurisdictions, CPA incurs legitimate third-party costs associated with having local agents make payments on behalf of US clients. However, on information and belief, even in some jurisdictions where a local agent is required, CPA is able to act directly or indirectly as its own local agent—thereby eliminating or reducing the need for third party payment.

**RESPONSE TO PARAGRAPH NO. 32:**

**CPA Global denies the allegations in this paragraph, except that CPA Global admits that in some jurisdictions CPA Global incurs third-party costs associated with local agents making payments on behalf of U.S. clients and that in some jurisdictions CPA Global is able to make payments directly on behalf of U.S. clients.**

33.     Finally, Clause 5.3 provides, "The Official Charge and/or the Country Charge may be subject to a charge for funds management in accordance with Clause 5.6."

**RESPONSE TO PARAGRAPH NO. 33:**

**Admitted.**

34.     Section 5.6 then provides that, "If the Official Charge, Country Charge, and/or other sums of money require to be converted from one currency into the Currency [the currency in which clients pay CPA, here USD], such sums of Charges shall be calculated using our CPA Global rates which include provision for funds management e.g. currency exchange/risk exposure, managing global transactions, credit risk and the financing of renewal payments."

**RESPONSE TO PARAGRAPH NO. 34:**

**Admitted.**

35.     As explained in detail below, CPA never discloses to clients what it charges for "funds management." On information and belief, given CPA's large volume of currency-related

transactions, CPA is able to exchange currencies at interbank exchange rates or close to interbank exchange rates, meaning they pay, if anything, a small fraction of one percent of the amount of currency converted in third party fees.

**RESPONSE TO PARAGRAPH NO. 35:**

    **Denied.**

36.    To the extent that CPA characterizes its overcharging as a "funds management charge," as explained below, this would represent an amount grossly in excess of what Brainchild or any reasonable client would be willing to pay.

**RESPONSE TO PARAGRAPH NO. 36:**

    **Denied.**

37.    In addition, the overcharging, whether in the guise of a funds management charge or otherwise, is not disclosed by CPA to its clients.

**RESPONSE TO PARAGRAPH NO. 37:**

    **Denied.**

**The Overbilling of Brainchild**

38.    When Brainchild was invoiced by CPA for the renewal of a US patent, CPA charged exactly what it had agreed to charge in the Agreement. A renewal notice for a US patent is attached as Exhibit B.

**RESPONSE TO PARAGRAPH NO. 38:**

    **Admitted.**

39.    The invoice was for the first maintenance fee on a US patent as a small entity (patent holders that qualify as a small entity pay reduced fees). The official fee is 1,000 US Dollars

("USD"). CPA invoiced Brainchild for 1,200 USD—which is the Official Charge of 1,000 USD plus the agreed upon Service Charge of 200 USD.

**RESPONSE TO PARAGRAPH NO. 39:**

**CPA Global denies that it invoiced Brainchild for the renewal of the patent in the March 24, 2021 Renewal Notice attached as Exhibit B.  The March 24, 2021 Renewal Notice attached as Exhibit B was served on Brainchild to notify Brainchild that it would be invoiced $1,200 on May 28, 2021 for the renewal of the U.S. patent, unless Brainchild instructed otherwise.  Brainchild terminated the Agreement and instructed CPA Global not to proceed with the renewal for this patent before an invoice was issued.**

40.    However, when Brainchild was invoiced by CPA for the renewal of its non-US Patents, CPA did not charge what it had agreed to charge in the Agreement. In fact, CPA charged amounts far in excess of what Brainchild should have been charged based on the Agreement. An invoice for foreign Patents is attached as Exhibit C.

**RESPONSE TO PARAGRAPH NO. 40:**

**CPA Global admits that an invoice for foreign patents is attached as Exhibit C to the Amended Complaint.  CPA Global denies the remaining allegations in this paragraph.**

41.    In addition, the invoice in Exhibit C only provides a total amount due for each renewal. CPA failed to give any details, explanations, or itemizations for its charges.

**RESPONSE TO PARAGRAPH NO. 41:**

**CPA Global admits that Exhibit C provides a total amount due for each renewal. CPA Global denies the remaining allegations in this paragraph.**

42.    The invoice includes the maintenance fee of a patent application in its fifth year in the European Patent Office (EPO). The payment to the patent office for this renewal is 820 Euros

("EUR"). The exchange rate on the invoice date, February 28, 2021, was approximately 0.8272 EUR to 1 USD. This means that the Official Fee was 991.30 USD. The Service Fee was 200 USD. There are no agent fees, country fees, or other fees associated with renewal in the European Patent Office.

**RESPONSE TO PARAGRAPH NO. 42:**

**CPA Global admits that the invoice attached as Exhibit C includes a renewal for a patent application in its fifth year in the European Patent Office and the renewal fee for the fifth year was 855 EUR as of February 28, 2021, and admits that the Service Fee was $200 USD for this renewal.  CPA Global denies the remaining allegations in this paragraph.**

43.     CPA should have charged 1191.30 USD for this EPO renewal.

**RESPONSE TO PARAGRAPH NO. 43:**

**Denied.**

44.     Instead, CPA charged 1801.58 USD for the renewal. This includes 610.28 USD in undisclosed overcharge.

**RESPONSE TO PARAGRAPH NO. 44:**

**CPA Global admits that it issued an invoice to Brainchild for $1,801.58 USD for a renewal of a patent application in Europe as reflected in Exhibit C.  CPA Global denies the remaining allegations in this paragraph.**

45.     The invoice also includes the maintenance fee of an issued patent in its sixth year in Canada. The payment to the patent office for this renewal is 204 Canadian Dollars ("CAD"). The exchange rate on the invoice date, February 28, 2021, was approximately 1.2697 CAD to 1 USD. This means that the Official Fee was 160.67 USD. The Service Fee was 200 USD. CPA

should have charged 360.67 USD for this renewal. There are no agent fees, country fees, or other fees associated with renewal of issued patents in Canada.

**RESPONSE TO PARAGRAPH NO. 45:**

**CPA Global admits that the invoice attached as Exhibit C includes a renewal for an issued patent in its sixth year in Canada and the standard renewal fee for an issued patent in its sixth year was $204 CAD of February 28, 2021, and admits that the Service Fee was $200 USD for this renewal.  CPA Global denies the remaining allegations in this paragraph.**

46.     Instead, CPA charged 575.02 USD for the renewal. This includes 214.35 USD in undisclosed overcharge.

**RESPONSE TO PARAGRAPH NO. 46:**

**CPA Global admits that it issued an invoice to  Brainchild for $575.02 USD for a renewal of a patent in Canada as reflected in Exhibit C.  CPA Global denies the remaining allegations in this paragraph.**

47.     The invoice also includes six maintenance fees, each for first time design registration renewals in the European Union Intellectual Property Office ("EUIPO"). The payment to the office for each renewal is 90 Euros ("EUR"). The exchange rate on the invoice date, February 28, 2021, was approximately 0.8272 EUR to 1 USD. This means that the Official Fee was 108.80 USD. The Service Fee was 200 USD. There are no agent fees, country fees, or other fees associated with renewal in EUIPO..

**RESPONSE TO PARAGRAPH NO. 47:**

**CPA Global admits that the invoice attached as Exhibit C includes eight renewals for design registrations in the EUIPO and that the standard renewal fee for each of these design**

registrations was 90 EUR, and admits that the Service Fee was $200 USD for each of these renewals.  CPA Global denies the remaining allegations in this paragraph.

48.     CPA should have charged 308.80 USD for each of these renewals.

**RESPONSE TO PARAGRAPH NO. 48**:

**Denied.**

49.     Instead, CPA charged 609.78.58 USD for each renewal. This includes 300.98 USD in undisclosed overcharge.

**RESPONSE TO PARAGRAPH NO. 49**:

**CPA Global admits that it issued an invoice to  Brainchild for $609.78 USD each for the renewals for design registrations in the European Union in Exhibit C.  CPA Global denies the remaining allegations in this paragraph.**

50.     Finally, the invoice includes six maintenance fees, each for first time design registration renewals in the United Kingdom. The payment to the office for each renewal is 70 Pounds Sterling ("GBP"). The exchange rate on the invoice date, February 28, 2021, was approximately 0.7157 GBP to 1 USD. This means that the Official Fee was 97.80 USD. The Service Fee was 200 USD. There are no agent fees, country fees, or other fees associated with these renewals.

**RESPONSE TO PARAGRAPH NO. 50**:

**CPA Global admits that the invoice attached as Exhibit C includes eight renewal for designs in Great Britain and that the standard renewal fee for each of these design registration renewals was 70 GBP, and admits that the Service Fee was $200 USD for each of these renewals.  CPA Global denies the remaining allegations in this paragraph.**

51.     CPA should have charged 297.80 USD for each of these renewals.

16

**RESPONSE TO PARAGRAPH NO. 51:**

    **Denied.**

52.    Instead, CPA charged 518.55 USD for each renewal. This includes 220.75 USD in undisclosed overcharge.

**RESPONSE TO PARAGRAPH NO. 52:**

    **CPA Global admits that it issued an invoice to Brainchild for $518.55 USD each for renewals for designs in Great Britain, as reflected in Exhibit C. CPA Global denies the remaining allegations in this paragraph.**

53.    In sum, the invoice in Exhibit C includes the agreed upon 3,600 USD in service fees for 18 renewals. It also includes 2,804.78 USD in legitimate third-party fees. The total amount that Brainchild should have been invoiced based on the Agreements is thus 6,404.78 USD.

**RESPONSE TO PARAGRAPH NO. 53:**

    **Denied.**

54.    However, CPA actually invoiced Brainchild for a total of $11,403.24. This includes $4,998.46 in overcharges.

**RESPONSE TO PARAGRAPH NO. 54:**

    **CPA Global admits that issued an invoice to Brainchild for a total of $11,403.24, as reflected in Exhibit C. CPA Global denies the remaining allegations in this paragraph.**

55.    CPA overcharged Brainchild by approximately 78% of the agreed upon amount.

**RESPONSE TO PARAGRAPH NO. 55:**

    **Denied.**

**CLASS ACTION ALLEGATIONS**

56.     Brainchild brings this action as a class action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of the following class (the "Class"): All persons or entities in the United States who entered into a Renewal Service Agreement using Defendants' standard agreements.

**RESPONSE TO PARAGRAPH NO. 56:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

57.     Excluded from the Class are: (i) Defendants and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (ii) any entity in which Defendant has a controlling interest, and Defendants' legal representatives; (iii) the judges to whom this action is assigned and any members of their immediate families; and (iv) any member of the Class who timely elects exclusion.

**RESPONSE TO PARAGRAPH NO. 57:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

58.     Brainchild reserves the right to amend or modify the definition of the Class with greater specificity or further division into subclasses as discovery and the orders of this Court warrant.

**RESPONSE TO PARAGRAPH NO. 58:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

59.   **Numerosity.** Rule 23(a)(1). The members of the Class are each so numerous that their individual joinder is impracticable. The proposed Class contains thousands of members. The true number of Class members can be ascertained through information and records in Defendants' exclusive possession, custody or control.

**RESPONSE TO PARAGRAPH NO. 59:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

60.   **Commonality.** Rule 23(a)(2). There are questions of law and fact common to the Class, which predominate over any questions which may affect only individual members of the Class, including but not limited to the following:

(a)   Whether Defendant engaged in a scheme to overcharge clients;

(b)   Whether Defendant breached the Agreement with Plaintiff and the Class by systematically overcharging Plaintiff and the Class;

(c)   Whether Defendant inappropriately applied "Country Charges", and whether Defendant added undisclosed margins or fees to Country Charges;

(d)   Whether Defendant inflated its own "Service Charges";

(e)   Whether Defendant inflated the "Official Charges";

(f)   Whether Defendant inappropriately, unfairly, or without adequate notice billed clients for late or urgency charges;

(g)   Whether Defendant inappropriately applied third party late or urgency charges, and whether Defendant added undisclosed margins or fees to third party late or urgency charges;

(h)     The nature of the "funds management charge", whether this charge was disclosed and agreed to by clients, whether it was inappropriately or unfairly applied, and whether it was excessive;

(i)     Whether the exchange rates charged by Defendants are unlawfully excessive under the contracts;

(j)     Whether Defendant's failure to provide detailed and transparent invoices violates its implied duty of good faith and fair dealing;

(k)     Whether Defendant's acts and practices constituted fraud;

(l)     Whether Defendant has been unjustly enriched through its unlawful conduct;

(m)     Whether declaratory, equitable, or injunctive relief should be appropriately awarded to the Plaintiff and the Class.

**RESPONSE TO PARAGRAPH NO. 60:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

61.     **Typicality.** Rule 23(a)(3). Brainchild's claims are typical of the claims of the members of the Class, because Plaintiff's and the Class's claims arise out of the same course of conduct by Defendant and are based on the same legal theories. Plaintiff and the members of the Class were overcharged, deceived, and their injuries are a direct proximate result of the same wrongful overbilling practices.

**RESPONSE TO PARAGRAPH NO. 61:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

62.    **Adequacy of Representation.** Rule 23(a)(4). Brainchild will fairly and adequately protect the interests of the Class because its interests do not conflict with the interests of the members of the Class it seeks to represent. Brainchild has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

**RESPONSE TO PARAGRAPH NO. 62:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

63.    **Predominance and Superiority.** Rule 23(b)(3). Questions of law and fact common to the Class predominate over individual issues. Resolution of the questions listed in ¶ 61, *supra*, will advance the litigation on behalf of all Class members. Individual issues are likely limited to the amount of damages each member of the Class sustained.

**RESPONSE TO PARAGRAPH NO. 63:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

64.    A class action is superior to other methods of litigating this dispute. The monetary damages and other pecuniary losses suffered by individual members of the Class are relatively small compared to the burden and expense that would be entailed by individual litigation of claims against the Defendants. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. As such, individual members of the Class do not have a strong interest in controlling the prosecution of separate actions. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the

delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here. Plaintiff knows of no other litigation addressing this issue on a classwide basis.

**RESPONSE TO PARAGRAPH NO. 64:**

> **This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

65. **Declaratory and Injunctive Relief.** Rule 23(b)(1) and (b)(2). In the alternative, the Class may also be certified because:

> (a) The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;
>
> (b) Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole; and/or
>
> (c) Certification of specific issues such as Defendants' liability is appropriate.

**RESPONSE TO PARAGRAPH NO. 65:**

> **This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

66. Adequate notice can be given to the Class directly using information maintained in Defendants' records or through notice by publication.

**RESPONSE TO PARAGRAPH NO. 66:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

67.     All Class members have been damaged in a similar fashion by the same conduct. The degree of damages suffered by individual members is calculable according to an ascertainable formula.

**RESPONSE TO PARAGRAPH NO. 67:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Breach of Contract)**

68.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

**RESPONSE TO PARAGRAPH NO. 68:**

**CPA Global incorporates by reference its responses to the preceding paragraphs as though set forth fully herein.**

69.     Defendant entered into written contracts with Plaintiff and the Class for renewal services.

**RESPONSE TO PARAGRAPH NO. 69:**

**Admitted that CPA Global entered into a renewal services agreement with Brainchild.**

70.     Plaintiff performed all obligations under the contract by paying all invoiced fees and charges associated with its renewal.

**RESPONSE TO PARAGRAPH NO. 70:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations, except that CPA Global admits that Brainchild paid all invoiced fees and charges.**

71.     All conditions required by the contract for Defendant's performance occurred.

**RESPONSE TO PARAGRAPH NO. 71:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

72.     Defendant breached these contracts by, among other things: (i) overcharging Plaintiff and the Class for services provided under the contract in excess of agreed upon rates, (ii) invoicing Plaintiff and the Class in an opaque manner, and (iii) concealing both the types of fees and the specific amount of fees it charged Plaintiff and the Class.

**RESPONSE TO PARAGRAPH NO. 72:**

**This paragraph states a legal conclusion to which no responsive pleading is required. To the extent a response is required, CPA Global denies the allegations.**

73.     Defendant also breached its contract with Plaintiff and the class by breaching the implied covenant of good faith and fair dealing. CPA did so by acting in its discretion and in bad faith by overcharging clients in the manner described above. Moreover, CPA acted in its discretion and in bad faith by billing clients in an opaque manner to hide its practice of overcharging clients.

**RESPONSE TO PARAGRAPH NO. 73:**

**Denied.**

74.     Defendant's breaches of contract caused actual damages to Plaintiff and the Class. Plaintiff and the Class suffered pecuniary damages as a result of Defendant's breach of contract.

**RESPONSE TO PARAGRAPH NO. 74:**

**Denied.**

75.     Therefore, Plaintiff and members of the Class have suffered compensatory, incidental, and consequential damages.

**RESPONSE TO PARAGRAPH NO. 75:**

**Denied.**

## SECOND CAUSE OF ACTION

### (Fraud)

76.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

**RESPONSE TO PARAGRAPH NO. 76:**

**No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).**

77.     Defendant intentionally concealed and misrepresented material facts concerning the renewal services agreements entered into by each member of the Class as follows: As set forth above, Defendant represented, before Plaintiff entered into the Agreement on April 24, 2018 and in order to induce Plaintiff and members of the Class to enter into and/or renew the renewal services agreements, that Defendant would charge only the Service Charge (i.e., $200 USD with respect to Plaintiff), the Official Charge (i.e., the actual cost charged by a jurisdiction's patent registry), the Country Charge (i.e., the fee required where a jurisdiction requires a local agent)

where applicable, and a fee for currency conversion which "include provision for funds management e.g. currency exchange/risk exposure, managing global transactions, credit risk and the financing of renewal payments." (*See* Ex. A §§ 4.1, 5.3, 5.6.) CPA's own statements thus provide that "funds management" is limited to fees for "currency exchange/risk exposure, managing global transactions, credit risk and the financing of renewal payments."

**RESPONSE TO PARAGRAPH NO. 77:**

**No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).**

78.     Notwithstanding these statements, CPA intentionally overcharged Plaintiff at rates far beyond those it had represented it would charge. As set forth above, CPA overcharged Plaintiff by $4,998.46 with respect to the invoices in Exhibits B and C. Moreover, CPA intentionally used opaque invoices that are devoid of any meaningful breakdown of charges to hide its overcharging scheme.

**RESPONSE TO PARAGRAPH NO. 78:**

**No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).**

79.     The misrepresentations set forth above were made, and the material facts set forth above were concealed, in part at the direction of CPA's then-Chief Executive Officer, Simon Webster. Mr. Webster used his position at CPA to continue the overcharging scheme throughout CPA's customer relationships, as well as the scheme of marketing CPA's services as if no overcharging would occur and concealing CPA's plans to overcharge customers once contracts

had been signed. Mr. Webster also directed that CPA's invoices be structured so as to conceal the overcharging scheme; at his knowledge and/or direction, the invoices provided no breakdown of fees. On information and belief, CPA has made no effort to correct Mr. Webster's fraudulent scheme after his departure in 2021.

**RESPONSE TO PARAGRAPH NO. 79:**

**No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).**

80. Moreover, given the centrality of the overcharging scheme to CPA's revenues, it is impossible for CPA's other executives and senior managers not to have known about the scheme. On information and belief, a very large and material proportion of CPA's revenues and resulting profits came from markups that can only be explained as overcharges. Likewise, numerous complaints were made to CPA regarding its practice of overcharging, and lawsuits— including a class action previously brought by Run Them Sweet, LLC alleging the same overcharging—were publicly filed against the company. Major clients of CPA who individually did millions of dollars in business with CPA complained about the practices upon their discovery; it is inconceivable that complaints by such major clients were not pervasively known through CPA's management and even in its in-house legal department. CPA's senior managers thus knew of and condoned, and failed to correct those unlawful practices, even when those practices indisputably became known to them. CPA's fraudulent practice of representing that charges would be limited to those in the service agreements and then charging undisclosed markups was long-standing and continuous despite these complaints. Together, CPA's executives and senior managers implemented an

arbitrary charging scheme that can be explained only as one in which clients were charged whatever CPA's CEO, other executives, and senior managers thought they could get away with.

**RESPONSE TO PARAGRAPH NO. 80:**

**No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).**

81.    CPA's executives, including Mr. Webster and other senior executives, and managers directed, implemented, and sanctioned the concealment of CPA's overcharging scheme, and indeed, concealed CPA's true charges (which were overcharges) by directing the issuance of invoices that were devoid of any meaningful breakdown of the fees and costs charged to customers, so that customers would be unable to discern which costs were legitimate and which were overcharges.

**RESPONSE TO PARAGRAPH NO. 81:**

**No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).**

82.    Plaintiff and each member of the Class reasonably relied on Defendant's false representations that it would charge only the fees set forth in its service agreements and upon its otherwise accurate representations that were rendered materially misleading by its intentional concealment and failure to disclose the material facts mentioned above.

**RESPONSE TO PARAGRAPH NO. 82:**

No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).

83. Defendant's misrepresentations and representations that became misleading due to intentional concealment of the facts were material to the purchasing decisions of Plaintiff and the other members of the Class. Specifically, these misrepresentations and acts of intentional concealment induced Plaintiff and the other members of the Class to enter into or to renew renewal services agreements that they would not have had the true facts been known to them.

**RESPONSE TO PARAGRAPH NO. 83:**

No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).

84. Defendant had a duty to disclose the facts that it intentionally concealed and misrepresented because it made general affirmative representations about its fees upon which they knew that Plaintiff and the other members of the Class would rely, as the most direct statement of Defendant's fees and charges which were made available to Plaintiff and the other members of the Class.

**RESPONSE TO PARAGRAPH NO. 84:**

No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).

85.     Therefore, Plaintiff and members of the Class have suffered compensatory, incidental, and consequential damages.

**RESPONSE TO PARAGRAPH NO. 85:**

**No response is required to the allegations contained in paragraphs 76 through 85 because Count II of the Amended Complaint was dismissed pursuant to the Court's January 11, 2023 Memorandum Opinion and Order (Dkt. 30).**

## AFFIRMATIVE DEFENSES

CPA Global alleges the following defenses and affirmative defenses to the Amended Complaint.  By alleging these defenses, CPA Global does not assume the burden of proof where that burden is on Plaintiff under the applicable law.  CPA Global reserves the right to amend or supplement its affirmative defenses.

1.     Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

2.     With respect to each and every allegation of the Amended Complaint as they relate to the request for class certification, class certification is not appropriate because there is a lack of:

     (a)     numerosity;

     (b)     commonality or community of interest;

     (c)     typicality;

     (d)     an ascertainable class;

     (e)     adequate representation;

     (f)     appropriateness of relief to the putative class as a whole;

(g)     predominance of common questions over questions affecting individual

class members;

(h)     substantial benefit to the litigants and the court; and

(i)     superiority of a class action to other available methods for fair and

efficient adjudication.

3.      Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of unclean hands and/or estoppel.

4.      Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

5.      Plaintiff's claims are barred in whole or in part by the doctrine of laches.

6.      Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

7.      Plaintiff's claims are barred in whole or in part because if Plaintiff was damaged in any way, the damage or injury was due to Plaintiff's conduct.

8.      Plaintiff's claims are barred because CPA Global has complied with each of its contractual obligations.

9.      Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to take reasonable efforts to mitigate its damages, if any.

10.     Plaintiff's claims are barred in whole or in part for lack of damages.

11.     Plaintiff's claims are barred in whole or in part because Plaintiff's alleged damages, if any, are speculative, and because of the impossibility of the ascertainment of those alleged damages.

12.     Plaintiff's claims are barred in whole or in part by the voluntary payment doctrine.

13.     Plaintiff's claims are barred, in whole or in part, by their own conduct, including but not limited to their failure to comply with their own contractual obligations and conditions, their own violation of the implied covenant of good faith and fair dealing, and their own fraudulent conduct.

14.     CPA Global reserves the right to raise any additional affirmative defenses that may be established during discovery and by the evidence in this case.

Dated:  January 25, 2023                    Respectfully submitted,

                                            _/s/ Eric C. Lyttle_
                                            QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
                                            Eric C. Lyttle, VSB No. 48518
                                            Jared W. Newton, VSB No. 80746
                                            Meghan M. McCaffrey (*pro hac vice*)
                                            J. Matthew Hamann (*pro hac vice*)

                                            1300 I Street, NW, Suite 900
                                            Washington, D.C. 20005
                                            Phone: (202) 538-8000
                                            Fax: (202) 538-8100
                                            ericlyttle@quinnemanuel.com
                                            jarednewton@quinnemanuel.com
                                            meghanmccaffrey@quinnemanuel.com
                                            matthewhamann@quinnemanuel.com

                                            *Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2023, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following parties:

BROWN NERI SMITH & KHAN, LLP
Geoffrey A. Neri, Esq, VSB No. 72219
Ethan J. Brown, Esq. (*pro hac vice* pending)
Ryan Abbott, MD, PhD, Esq. (*pro hac vice* pending)
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
Geoff@bnsklaw.com
Ethan@bnsklaw.com
Ryan@bnsklaw.com

*Counsel for Plaintiff and the Proposed Class*

 */s/ Eric C. Lyttle*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Eric C. Lyttle, VSB No. 48518

1300 I Street, NW, Suite 900
Washington, D.C. 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
ericlyttle@quinnemanuel.com