**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BRAINCHILD SURGICAL DEVICES, LLC, a New York limited liability company, on behalf of themselves and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CPA GLOBAL LIMITED a foreign entity formed under the laws of the Island of Jersey, Channel Islands,<br><br>Defendant. | Case No. 1:21-cv-00554-RDA-LRV |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CPA GLOBAL LIMITED'S MOTION TO STRIKE PLAINTIFF'S EXPERT REPORT, FOR A PROTECTIVE ORDER, AND FOR AN EXTENSION OF EXPERT DEPOSITION SCHEDULE**

Pursuant to Federal Rules of Civil Procedure 26 and 37, Defendant CPA Global Limited ("CPA Global" or "Defendant") respectfully moves to strike Sections II and IV of the unauthorized and untimely reply report of David Cass served by Plaintiff Brainchild Surgical Devices, LLC ("Brainchild" or "Plaintiff") on August 27, 2023; for a protective order with regard to the deposition of CPA Global's expert, Dr. Divya Mathur; and for an extension of the expert deposition deadline until September 16, 2023, to complete the depositions of Dr. Mathur and Mr. Cass.  In the alternative, if the Court does not strike Mr. Cass's new opinions, CPA Global requests that it be permitted until September 26, 2023, to serve a supplemental report responding to Mr. Cass's new opinions, and that the deadline for completing the depositions of Dr. Mathur and Mr. Cass be extended until October 6, 2023.  The parties have made a good faith effort to meet and confer and narrow any areas of dispute in accordance with Local Civil Rule 7(E) and Local Civil Rule 37(E); the parties have agreed to continue Mr. Cass's deposition until September 16, 2023,

but have been unable to resolve their dispute with regard to the remaining issues.

## INTRODUCTION

On August 27, 2023, Brainchild served an unauthorized third "reply report" from its expert, David Cass—more than a month after Brainchild's deadline to serve supplemental expert reports and just three days before Mr. Cass's deposition.  Mr. Cass's third report offers two new opinions that could have and should have been offered before and should be stricken.  Mr. Cass had all of the documents and data underlying his new opinions months ago.  Brainchild has simply decided to offer entirely new opinions at the eleventh hour because it is concerned about the prior ones.  But this is grossly prejudicial to CPA Global, which has already spent extraordinary amounts responding to Mr. Cass's two prior reports, was about to depose Mr. Cass and be done with expert discovery, and had already begun preparing its summary judgment motion due on September 29.  If Mr. Cass's newly disclosed, unauthorized opinions are allowed to stand, the case schedule will need to be delayed for a ***fourth time***, because CPA Global's expert, Dr. Mathur, will need time to digest and respond to them.  Enough is enough.  CPA Global should not be denied an efficient and speedy resolution because Brainchild decided to flout the Court's scheduling order.  Mr. Cass's new opinions should be stricken.

CPA Global also respectfully requests a protective order and extension of the deadline for expert depositions.  Before Brainchild served Mr. Cass's unauthorized report, his deposition had been scheduled for August 30 and Dr. Mathur's deposition had been scheduled for August 31.  The parties have agreed to move Mr. Cass's deposition to September 16, but Brainchild has refused to agree to move Dr. Mathur's deposition.  Instead, it has threatened to take a non-appearance and seek sanctions if Dr. Mathur did not appear.  Proceeding with Dr. Mathur's deposition on the scheduled date, while the status of Mr. Cass's new opinions remains undecided, would be entirely

unfair and inefficient.  It would be a waste of both parties' time and resources for Dr. Mathur to potentially be deposed twice.

If the Court strikes Mr. Cass's untimely new opinions (as it should), Dr. Mathur is prepared to proceed with her deposition on September 15, and it is CPA Global's understanding that counsel for Brainchild is available on that date as well.  Thus, an extension until September 16 would allow the parties to complete expert depositions, without impacting the remainder of the schedule. Alternatively, if the Court does not strike Mr. Cass's new opinions, CPA Global requests an extension until October 6, 2023 to complete expert depositions, to allow Dr. Mathur time to prepare and serve a supplemental report to address Mr. Cass's new opinions.  In that event, an extension of the schedule for filing *Daubert* and summary judgment motions would be necessary, likely until at least October 20, 2023, though CPA Global is willing to meet and confer with Brainchild to discuss an appropriate schedule.

## BACKGROUND

### A.    Claims At Issue

Brainchild is a medical device company.  First Am. Compl. (Dkt. 23), ¶ 14.  In 2018, Brainchild and CPA Global entered into a Renewal Services Agreement for CPA Global to provide services to renew Brainchild's patents world-wide.  *Id.* ¶¶ 2, 24.  Brainchild alleges that CPA Global breached the Agreement by overcharging Brainchild for those patent renewal services.  *Id.* ¶¶ 2–4.  Brainchild's initial complaint brought claims on behalf of itself and a putative class for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent concealment, unjust enrichment, and injunctive relief.  Compl. (Dkt. 1).  On April 1, 2022, the Court granted CPA Global's motion to dismiss the breach of implied covenant of good faith and fair dealing, unjust enrichment, and injunctive relief claims, with prejudice, and the fraudulent concealment claim without prejudice.  Apr. 1, 2022 Mem. Opinion & Order (Dkt. 22) at 10.

Brainchild subsequently filed an amended complaint, and on January 11, 2023, the Court again granted CPA Global's motion to dismiss the fraudulent concealment claim, this time with prejudice.  Jan. 11, 2023 Mem. Opinion & Order (Dkt. 30) at 1.

### B.   The Parties' Opening and Rebuttal/Supplemental Expert Reports

On April 5, 2023, the Court entered an order prescribing that Brainchild's expert disclosures were due on May 8, 2023, and CPA Global's expert disclosures were due on June 7, 2023.  Dkt. 41.  Pursuant the Court's February 23, 2023 Scheduling Order, Dkt. 35, and the parties' Joint Discovery Plan, Dkt. 33, Brainchild was required to "disclose no later than fifteen (15) days [after CPA Global served it's expert disclosures] any evidence that is solely contradictory or rebuttal evidence to Defendant's disclosure" —*i.e.*, by no later than June 22, 2023.  *Id*. at ¶ 7.

On May 8, 2023, Brainchild served reports from its proffered experts, David Cass and John Keogh.  Decl. of J. Matthew Hamann ¶ 4.  On June 7, 2023, CPA Global served reports from its experts, Dr. Divya Mathur and Erik Oliver.  *Id*. at ¶ 5.  Among other things, Dr. Mathur's report analyzed the contracts from CPA Global's original sample of 100 client accounts.  *Id*. at ¶ 6.  This sample was drawn based on Plaintiff's original class definition and class period of all CPA Global customers from October 6, 2017, to the present with fewer than 101 patent renewals in a given year.[1]  *Id*.

---

[1]    As the Court may recall, CPA Global drew an initial sample of 100 accounts for CPA Global clients from October 6, 2017, to the present with fewer than 101 renewals in a given year (the "Original 100 Account Sample"), for which it produced contracts, invoices, and renewal notices.  *See* Dkt. 70 at 11-12.  This sample was based on the class definition and class period found in Brainchild's First Set of Requests for Production.  Pursuant to the Court's May 26, 2023 Order on Brainchild's Motion to Compel, CPA Global then drew a supplemental sample of 15 accounts for CPA Global clients from January 1, 2017, to October 5, 2017, with fewer than 101 renewals in a given year (the "Supplemental 15 Account Sample," and together with the Original 100 Account Sample, the "115 Account Sample").  *See* Dkt. 75 at 2.  CPA Global also drew another sample of 23 accounts of CPA Global clients from January 1, 2017, to the present, with more than

On June 16, 2023, Brainchild moved to extend the expert discovery schedule to allow its experts to serve supplemental/rebuttal reports by July 24, 2023. Dkt. 105. On June 23, 2023, the Court granted Brainchild's motion, and entered an order requiring (a) Brainchild to serve "any rebuttal/supplemental expert reports" by July 17, 2023, (b) CPA Global to serve any "supplemental responsive expert reports" by August 2, 2023, and (c) the parties to complete expert depositions by August 8, 2023. Dkt. 119 at 3. At Brainchild's request, on July 14, 2023, the parties filed a joint motion (a) seeking to further extend Brainchild's deadline to file its rebuttal expert reports to July 24, 2023, (b) for CPA Global to serve its responsive expert reports to August 21, 2023, and (c) for the parties to complete expert depositions by August 31, 2023. Dkt. 143. On July 17, 2023, the Court entered an order granting the parties' agreed-upon schedule. Dkt. 145. The Court subsequently entered an agreed-upon order regarding the briefing schedule for summary judgment, *Daubert*, and class certification motions, providing that summary judgment and *Daubert* motions shall be filed on or before September 29, 2023. Dkt. 165.

On July 24, 2023, Brainchild served supplemental/rebuttal expert reports from Mr. Cass and Mr. Keogh. Among other things, in his July 24 report (the "July 24 Cass Report"), Mr. Cass purported to opine on class-wide damages based on a sample of 600 patent renewals from accounts with fewer than 101 renewals in a given year. Ex. 1 at ¶¶ 41-62. Mr. Cass relied on just a sample, even though he asserted he could have calculated alleged "overcharges" for each renewal in the data sets provided by CPA Global. *Id*. at ¶ 60. This sample was *new* and had never previously been identified by Brainchild. It was not drawn from the 115 Account Sample that was endorsed by the Court, and for which CPA Global produced contracts, invoices, and renewal notices.

---

100 renewals in a given year, plus CPA Global's accounts for Dow Chemical and DuPont, pursuant to the Court's June 23, 2023 Order (the "25 Account Sample"). *See* Dkt. 119 at 2.

Furthermore, in the July 24 Cass Report, Mr. Cass did not address Dr. Mathur's analysis of the contracts underlying the Original 100 Account Sample, other than to say he reviewed the contracts and disagreed with Dr. Mathur's conclusions. *Id*. at ¶¶ 14, 42.  Nor did Mr. Cass attempt to analyze the contracts, invoices, or patent renewal notices underlying the supplemental samples CPA Global had been ordered to produce after Mr. Cass's opening May 8 report.  Indeed, it appears Plaintiff's counsel did not even attempt to download at least some of these documents until after Mr. Cass submitted the July 24 Cass Report, despite the fact Plaintiff had moved to compel their production.  Ex. 2 at 2 (August 22, 2023 email requesting that CPA Global re-send passwords to download the invoices and patent renewal notices for the Original 100 Account Sample and Supplemental 15 Account Sample).

On August 21, 2023, CPA Global served rebuttal expert reports from Dr. Mathur and Mr. Oliver.  Among other things, Dr. Mathur pointed out that the 600 patent renewals that Mr. Cass analyzed were not, in fact, a random sample, Ex. 4 at ¶¶ 41-43, and addressed differences in the language of the patent renewal agreements for those clients, *id*. at ¶¶ 27-37.  Dr. Mathur also analyzed the contracts underlying the Supplemental 15 Account Sample and the 25 Account Sample.  *Id*. at ¶¶ 15-26.  In addition, in the course of preparing Dr. Mathur's supplemental report, CPA Global determined that it had inadvertently failed to produce the renewal agreements for the Supplemental 15 Account Sample, though it had produced the invoices and renewal notices for these accounts.[2]  CPA Global promptly produced these contracts after it realized the error.  Ex. 5.

Consistent with the Court's order that expert depositions be completed by August 31, the parties agreed that Mr. Cass would be deposed on August 30 and Dr. Mathur would be deposed

---

[2]  The contracts had been collected and provided to CPA Global's document vendor, but a miscommunication resulted in them not being pushed through for production.

on August 31.  Ex. 6.

C.    **David Cass's Unauthorized August 27, 2023 Reply Report**

On Thursday, August 24, Brainchild proposed to meet and confer regarding Dr. Mathur's August 21 report, and suggested that it may serve another report from Mr. Cass without leave of Court.  Ex. 7 at 1-2.  The parties met and conferred on Sunday, August 27, during which Brainchild represented that it would be serving a supplemental report from Mr. Cass, despite lacking permission to do so.  Hamann Decl. ¶ 7.

Later that same day, Brainchild served a 14-page "reply report" from Mr. Cass (the "August 27 Cass Report").  Ex. 8.  The report contains three substantive sections.  In the first section (labeled Section II), Mr. Cass attempts to circumvent Dr. Mathur's criticism of his sampling methodology by calculating the alleged "overcharge" for each patent renewal in the entire population of CPA accounts with less than 101 patent renewals in a given year.  *Id*. at ¶¶ 3-26.  The second section (labeled Section III) examines the language of some patent renewal agreements in Mr. Cass's 600 renewal sample and opines that the contract language was not significantly different among these renewal agreements.  *Id*. at ¶¶ 27-52.  In the third section (labeled Section IV), Mr. Cass opines that the patent renewal *notices* sent by CPA Global associated with the 115 Account Sample supersede any patent renewal *agreements* with its customers and that the language in each of the ***4,092 renewal notices*** did not differ.  *Id*. at ¶¶ 53-59.  It is indisputable that the August 27 Cass Report was not contemplated in the Scheduling Order and that each opinion in the Report is new.

As a result of Mr. Cass's new, unauthorized report—served just three days before Mr. Cass's and then Dr. Mathur's depositions—CPA Global requested that the parties continue the depositions to allow CPA Global time to assess the August 27 Cass Report and its position.  Ex. 9 at 5.  Brainchild's counsel advised that he was available on September 15 and 16, and confirmed

that Mr. Cass was available for his deposition on September 16. *Id*. at 2, 5-6. CPA Global similarly confirmed that Dr. Mathur was available for her deposition on September 15. *Id*. at 5-6. However, Brainchild refused to reschedule Dr. Mathur's deposition to September 15, unless the parties reached agreement as to Mr. Cass's unauthorized report. *Id*. at 2-3. Brainchild took the position that, unless Dr. Mathur sat for deposition just four days after Plaintiff served Mr. Cass's reply report, it would take a non-appearance and seek sanctions. *Id*. On the other hand, if Dr. Mathur did sit for a deposition, but was unprepared to address the August 27 Cass Report, Brainchild reserved the right to either strike any responsive opinions Dr. Mathur might offer in the future or to compel a second deposition. *Id*. at 4. Faced with this untenable choice, CPA Global was forced to file this motion in advance of Dr. Mathur's scheduled deposition on August 31.

## ARGUMENT

## I.   THE COURT SHOULD STRIKE SECTIONS II AND IV OF MR. CASS'S AUGUST 27 REPLY REPORT AS UNTIMELY NEW OPINIONS

Pursuant to Federal Rule of Civil Procedure 26(a)(2) a party must provide expert disclosures for any expert witness on which it intends to rely. Among other things, these disclosures must include "a complete statement of all opinions the witness will express and the basis and reasons for them," and must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(B)(i), (D). Under Federal Rule of Civil Procedure 37(c)(1), a party who fails to make adequate disclosures under Rule 26(a) may not "use that information or witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Under Fourth Circuit precedent, district courts have "broad discretion in deciding whether a nondisclosure of evidence is substantially justified or harmless." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). In addition, under Rule

8

16(f), the court may "issue any just orders, including those authorized by Rule 37(b)(2)(A)," as well as exclusion for failure to obey a scheduling order. *E. W., LLC v. Rahman*, 2012 WL 4105129, at *6 (E.D. Va. Sept. 17, 2012) (quoting Fed. R. Civ. P. 16(f)(1)(c)).  In determining whether exclusion is appropriate under either Rule 37(c) or Rule 16(f), the court should consider the following five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Southern States Rack & Fixture,* 318 F.3d at 597; *see also Rahman*, 2012 WL 4105129, at *6.

A party's obligation to supplement expert witness information does not "permit a party to make an end-run around the normal timetable for conducting discovery." *Colony Apartments v. Abacus Project Mgmt., Inc.,* 197 Fed. App'x 217, 231 (4th Cir. 2006).  As such, "Courts distinguish true supplementation (*e.g.,* correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing an expert report with a new and improved expert report." *Gallagher v. Southern Source Packaging, LLC,* 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008).  If the disclosures at issue are "not 'true supplementation' then the court has the discretion, as pursuant to Rule 37(c)(1), to exclude these disclosures." *Rahman*, 2012 WL 4105129, at *6–7 (citing *Southern States Rack & Fixture, Inc.*, 318 F.3d at 695–96).

### A. Mr. Cass's Unauthorized Reply Contains New Opinions That Should Have Been Offered Before

Pursuant to the Court's Scheduling Order, any supplemental opinion from Mr. Cass was required to be served by July 24.  Dkt. 119.  Yet, in deliberate violation of this order, Brainchild served a ***third report*** for Mr. Cass more than a month later, on August 27—just days before expert

depositions and after CPA Global had begun preparing its summary judgment motion. The August 27 Cass Report offers untimely new opinions, which could have and should have been disclosed in his prior reports.

*First*, in Section II of the report, Dr. Cass provides a calculation of damages based on data produced by CPA Global for all accounts with less than 101 patent renewals, not just based on the accounts in his own 600 renewal sample. Ex. 8 at ¶ 5. The data Mr. Cass relied on in this opinion was produced to Brainchild on June 13, 2023. Ex. 10. There is thus no reason Mr. Cass could not have provided this same analysis in his July 24 report, yet he did not do so. Indeed, Mr. Cass stated in the July 24 Cass Report that he could do the analysis. Ex. 1 at ¶ 60 ("I could alternately directly calculate overcharge amounts for the entirety of the provided data."). He simply chose not to. Dr. Mathur's critique of his sampling methodology is no basis for Mr. Cass to offer a new analysis now and upend a schedule that has already been extended multiple times. That his sampling methodology would be critiqued should have been anticipated and he should have been prepared to defend it. And if Mr. Cass could not defend his methodology, he should have done what he waited until August 27 to do and provided an estimate of damages across all renewals.

*Second*, in Section IV of his report, Mr. Cass opines for the first time that 4,092 patent renewal notices sent by CPA Global superseded any renewal agreements associated with the 115 Account Sample and are "uniform." Ex. 8 at ¶¶ 54, 59. But the production of these renewal notices was completed on June 30—over *three weeks before* his July 24 report. *See* Ex. 11; *see also* Ex. 2. There is no reason Mr. Cass could not have offered this opinion in that report. Indeed, the renewal notices for Brainchild were produced prior to Mr. Cass's initial May 8 report, so if this was his understanding of the relationship between the renewal agreements and renewal notices, there was no reason his opinion should not have been disclosed in his initial report. Yet, it was

not.  And, indeed, Brainchild apparently did not even download the productions containing the renewal notices for the 115 Account Sample until **August 22**.  Ex. 2.[3]

Even though there are adequate grounds to do so, CPA Global is not moving to strike Section III of the August 27 Cass Report because Mr. Cass did not have the contracts underlying his 600 renewal sample at the time of the July 24 Cass Report.[4]  In stark contrast, however, Mr. Cass *did have* all the documents and data on which he relies in Sections II and IV of his August 27 Cass Report at that time.  Accordingly, neither Section II nor Section IV of Mr. Cass's August 27 report are "supplementations."  Instead, they "contain[] new information and expert opinion" that is "an expansion of [his] earlier expert report" and "cannot be fairly said to be based solely upon the discovery of new information."  *Rahman*, 2012 WL 4105129, at *7 (striking supplemental expert report served after the parties deadline for serving expert reports had passed).

---

[3] Brainchild will likely point to CPA Global's inadvertent failure to produce the renewal agreements for the Supplemental 15 Account Sample to justify Mr. Cass's unauthorized report.  However, it is evident neither Brainchild nor Mr. Cass made any effort to find those agreements before preparing the July 24 Cass Report.  *See generally* Ex 1; *see also* Ex. 2.  These renewal agreements are not discussed in either the July 24 Cass Report or August 27 Cass Report.  Instead, Mr. Cass now relies on an analysis of over 4,000 renewal *notices* never previously disclosed.

[4] CPA Global repeatedly invited Brainchild to propose its own sample of accounts for which CPA Global would produce contracts and other documents.  *See*, *e.g.*, Dkt. 70 at 11.  Brainchild did not do so and instead pushed its maximalist position it was entitled to every contract for every putative class member.  It was thus entirely appropriate for Dr. Mathur to review the contracts underlying Mr. Cass's new sample and Brainchild has only itself to blame for not having those contracts before the July 24 Cass Report.  Had Brainchild identified the 600 renewal sample earlier, as CPA Global invited, there would have been no need for the August 27 Cass Report.  Nonetheless, given the fact that Mr. Cass did not have the documents before the July 24 Cass Report, CPA Global has decided not to move to strike Section III.

## B.   Each of the *Southern States* Factors Weighs In Favor of Striking Mr. Cass's New Opinions

There is little doubt that Sections II and IV of the August 27 Cass Report should be stricken "[c]onsidering the five-fold factors *in toto*" outlined in the Fourth Circuit's *Southern States* test. *See id.*

*First*, Mr. Cass's new opinions were a surprise to CPA Global because Brainchild did not provide these opinions by the Court-ordered deadline of July 24. *Id.* (finding factor met where "Defendants were already granted an earlier extension of time in which to file a rebuttal report, which entailed an accompanying deadline by which Defendants' expert should have been deposed," yet defendants did not disclose the new opinions by that time).

*Second*, there is no adequate method to cure the surprise and Brainchild has proposed none. Instead, it proposes that CPA Global be forced to proceed with Dr. Mathur's deposition without allowing either her or CPA Global to adequately examine Mr. Cass's report or to respond at all— indeed it *threatened sanctions* if CPA Global took any such steps. *See Southern States Rack & Fixture*, 318 F.3d at 597 (finding that the ability to cross-examine the opposing expert is not a sufficient cure, because the "rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts" (quotation omitted)). At best, CPA Global would be forced to once again extend the case schedule to address Mr. Cass's belated disclosures, which would require even more time and money. *See Rahman*, 2012 WL 4105129, at *7 (finding factor met when "[i]t was Defendants' choice to file expert reports so perilously close to trial, having already been the beneficiary of numerous time extensions related to discovery").

*Third*, the Court has already extended the schedule in this case three times. Dkts. 41, 119, 145. If Mr. Cass's unauthorized reply is allowed to stand, Dr. Mathur must be allowed to prepare

a response.  This would mean pushing out the current September date for summary judgment and *Daubert* motions by at least 21 days.  Given repeated prior delays caused by Plaintiff's tardiness, CPA Global should not be again forced to accept a delay caused by an unauthorized report.  *See Gallagher*, 568 F. Supp. 2d at 632 ("Although a trial date has not been set, this case has been pending [for more than two years], and reopening discovery would trample the Scheduling Order and disrupt proceedings in this case.").

*Fourth*, Mr. Cass's new, unauthorized opinions are important because they purport to provide a new class-wide damages calculation method and an entirely new theory put forward by Plaintiff for the first time that the renewal notices supersede the terms of renewal agreements.  But their importance only underscores "why [the opinions] should have been disclosed in a timely manner," *Southern States Rack & Fixture*, 318 F.3d at 597, particularly where Mr. Cass has already submitted two prior reports in this case.  *See Gallagher*, 568 F. Supp. 2d at 632 (fourth factor met where expert previously served expert reports in the case).

*Fifth*, Brainchild has not and cannot provide any adequate explanation why it failed to provide these opinions earlier, despite having the opportunity to do so.  *See Rahman*, 2012 WL 4105129, at *7 (fifth factor met where "the Defendants have not provided an explanation for their failure to disclose the instant report").  Indeed, unlike the defendants in *Rahman*, Brainchild had the ability to serve a supplemental report, yet did not disclose these opinions at that time.  *See id*. (noting "that supplemental reports were not subject to any deadline" in that case).

If the court does not strike Sections II and IV of the August 27 Cass Report, CPA Global requests the opportunity to serve a further supplemental expert report from Dr. Mathur by September 26, 2023—30 days after Brainchild served the August 27 Cass Report—to address Mr. Cass's new opinions.  This extension would in turn require an extension of the existing schedule

for completing expert depositions, as well as for filing of *Daubert* and summary judgment motions, which otherwise are due under the current schedule just three days later on September 29, 2023. Dkt. 165.  Thirty days for Dr. Mathur to serve a supplemental report is appropriate and necessary under the circumstances, particularly given that Mr. Cass purports to opine on the meaning and impact of more than 4,000 renewal notices.  Ex. 8 at ¶¶ 56-57.

## II.   THE COURT SHOULD ISSUE A PROTECTIVE ORDER WITH REGARD TO DR. MATHUR'S SCHEDULED DEPOSITION AND EXTEND THE DEADLINE TO DEPOSE MR. CASS AND DR. MATHUR

Despite serving Mr. Cass's new expert report on August 27, just four days before Dr. Mathur's August 31, 2023 deposition, Brainchild has refused to agree to continue her deposition. Ex. 9.  If the Court strikes Sections II and IV of the August 27 Cass Report, Dr. Mathur is available to be deposed on September 15, and CPA Global understands counsel for Brainchild is available on that date as well.  For his part, Mr. Cass is available for his deposition on September 16, and the parties have agreed to continue his deposition to that date.  *Id*. at 2.  If the Court does not strike Sections II and IV, a longer extension until October 6 would be required to allow Dr. Mathur to respond to Mr. Cass's new opinions, including serving a supplemental expert report.

Granting CPA Global's proposed protective order and extension to complete expert depositions will enable the parties to proceed as quickly and efficiently as possible and avoid potentially duplicative depositions.  Brainchild has provided no basis to oppose this reasonable request.  Its only purported basis for doing so is that the Court has already set a deadline for expert depositions and Dr. Mathur's deposition had been previously scheduled for August 31. Ex. 9 at 3, 4.  Requiring Dr. Mathur to be deposed without having any opportunity to fully digest and respond to Mr. Cass's latest expert report, however, is entirely unfair.  Moreover, there is absolutely no reason for Dr. Mathur to be deposed twice; that is wasteful of both parties' time and resources.

If Mr. Cass's new opinions are struck and the parties are able to complete Dr. Mathur's and Mr. Cass's depositions by September 16, CPA Global does not believe any other extensions to the case schedule would be necessary.  If, however, Mr. Cass's new opinions are not struck and Dr. Mathur is required to submit an additional supplemental report, a further extension of the deadlines to file *Daubert* and summary judgment motions would be necessary.  CPA Global submits that the parties would likely require until at least October 20, 2023, *i.e.*, two weeks beyond the proposed October 6, 2023 deadline to complete expert depositions, to file *Daubert* and summary judgment motions, though it is willing to meet and confer with Plaintiff to discuss a proposed schedule in the event that the Court does not strike Mr. Cass's new opinions.

## CONCLUSION

For the foregoing reasons, CPA Global respectfully requests that the Court grant its motion to strike Sections II and IV Mr. Cass's unauthorized August 27, 2023 reply report; grant its motion for a protective order with regard to Dr. Mathur's scheduled deposition; and grant CPA Global's request for an extension of time until September 16, 2023 to complete the depositions of Dr. Mathur and Mr. Cass.  In the alternative, if the Court does not grant its motion to strike Mr. Cass's new opinions, CPA Global requests that it be permitted until September 26, 2023 to serve a supplemental report responding to Mr. Cass's opinions, and that the deadline for completing the depositions of Dr. Mathur and Mr. Cass be extended until October 6, 2023.

Dated: August 30, 2023

Respectfully submitted,

*/s/ Eric C. Lyttle*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Eric C. Lyttle, VSB No. 48518
Meghan M. McCaffrey (*pro hac vice*)
J. Matthew Hamann (*pro hac vice*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
ericlyttle@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
matthewhamann@quinnemanuel.com

Michael L. Fazio (*pro hac vice*)
Anthony P. Alden (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Phone: (213) 443-3000
Fax: (213) 443-3100
michaelfazio@quinnemanuel.com
anthonyalden@quinnemanuel.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of August 2023, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following parties:

BROWN NERI SMITH & KHAN, LLP
Geoffrey A. Neri, Esq, VSB No. 72219
Ethan J. Brown, Esq.
Ryan Abbott, MD, PhD, Esq.
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
Geoff@bnsklaw.com
Ethan@bnsklaw.com
Ryan@bnsklaw.com

*Counsel for Plaintiff and the Proposed Class*

*/s/ Eric C. Lyttle*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Eric C. Lyttle, VSB No. 48518

1300 I Street, NW, Suite 900
Washington, D.C. 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
ericlyttle@quinnemanuel.com

17