IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRAINCHILD SURGICAL DEVICES, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )    Civil Action No. 1:21-cv-0554 (RDA/LRV) |
| CPA GLOBAL LIMITED, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## ORDER

This matter comes before the Court on Defendant CPA Global Limited's Motion to Strike Plaintiff's Expert Report, for a Protective Order, and for an Extension of Expert Deposition Schedule (Dkt. No. 166), and Plaintiff Brainchild Surgical Devices, LLC's Memorandum of Law in Support of Motion for an Order Imposing Sanctions on Defendant CPA Global Limited and in Opposition to Defendant's Motion to Strike (Dkt. No. 173), which the Court interprets as a motion for sanctions. The motions are fully briefed (*see* Dkt. Nos. 167, 176, 178), and a telephonic hearing on the motions was held on September 8, 2023, at which counsel for both parties appeared. For the reasons set forth below, both motions will be granted in part and denied in part.

The Court provides the following procedural history to give context to the instant motions. On February 15, 2023, the parties filed a Joint Discovery Plan (Dkt. No. 33) to complete all fact and expert discovery by June 9, 2023, the deadline set forth in the Court's Scheduling Order (Dkt. No. 32). In the Joint Discovery Plan, the parties proposed deadlines for expert disclosures under Federal Rule of Civil Procedure 26(a)(2) that aligned with this Court's Local Rules, but they also proposed certain deadlines that were more accelerated than required by the Federal or Local Rules.

Specifically, the parties proposed that dispositive motions and any motion for class certification must be *fully briefed* no later than June 14, 2023, mere days after the discovery cut-off. (*See* Dkt. No. 33 ¶¶ 8–9.)

On February 22, 2023, the Court held a Rule 16(b) initial pretrial conference, during which the undersigned discussed the proposed deadlines with the parties and expressed concern than the timetable was needlessly accelerated and unrealistic. The Court cautioned that unnecessarily imposing impractical deadlines in a complex case like this one risked the need for requesting extensions at a later time. Accordingly, and despite some protestation by the parties, the Court's Rule 16(b) Order declined to adopt the accelerated timeline proposed in the Joint Discovery Plan and instead set a deadline for the filing of class certification and dispositive motions after the close of discovery. (*See* Dkt. No. 35 ¶ 7.) Specifically, the Rule 16(b) Order adopted the following deadlines in accordance with the Local Rules:

- April 10, 2023: Plaintiff's expert disclosures
- May 10, 2023: Defendant's expert disclosures
- Fifteen days after Defendant's expert disclosures: Plaintiff's rebuttal expert disclosures
- June 9, 2023: Close of discovery
- June 13, 2023: Dispositive motions and motion for class certification

On April 4, 2023, the parties jointly moved to extend the deadlines for expert disclosures, fact and expert discovery, and class certification and dipositive motions. (Dkt. No. 40.) The Court granted the parties' motion in part, extending the deadlines for Plaintiff's and Defendant's expert disclosures to May 8 and June 7, 2023, respectively; the Court also extended the discovery cut-off deadline to July 10, 2023. (Dkt. No. 41.) One month later—and nearly *three* months after discovery opened on February 15 pursuant to the Court's Scheduling Order—both Plaintiff and Defendant filed their first motions to compel discovery from the other party. (Dkt. Nos. 46 & 49.) Over the next two

months, the parties filed numerous discovery motions, for which the Court held no less than six hearings.

On June 16, 2023, Plaintiff filed a motion to again extend the expert deadlines. (Dkt. No. 105.) A basis for the motion was that Plaintiff had received only minimal document discovery from Defendant and thus needed more time to review and incorporate documents recently produced by Defendant. Notably, by this point, each party's experts already had served one round of reports. Thus, in addition to requesting an extension of its expert rebuttal report deadline, Plaintiff requested leave for its rebuttal report to be a "supplemental" report to include analysis derived from a review of documents Defendant produced after the deadline for Plaintiff's opening expert report. (*See* Dkt. No. 105-1 at 2–3.) In response, Defendant requested that if Plaintiff were granted permission to serve a supplemental report (instead of a traditional rebuttal report), that Defendant be allowed to serve a report in response to Plaintiff's supplemental report. (*See* Dkt. No. 113 at 12; Dkt. No. 125 at 24:5 – 24:13.) On June 23, 2023, the Court granted Plaintiff's motion in part, ordering:

> Plaintiffs Motion to Extend Expert Deadlines (Dkt. No. 105) is **GRANTED IN PART**, such that Plaintiff's <u>rebuttal/supplemental</u> expert reports are due by **July 17, 2023**; CPA Global's <u>supplemental responsive</u> expert reports are due by **August 2, 2023**; and expert depositions must be complete by **August 8, 2023**[.]

(Dkt. No. 119 at 3 (emphasis in original).)

Subsequently, on July 14, the parties jointly moved to extend the expert deadlines *for a third time* such that "Plaintiff's Supplemental/Rebuttal Expert Reports" would be due by July 24, 2023, and "Defendants' Supplemental Responsive Expert Reports" would be due by August 21, 2023. (Dkt. No. 143 ¶ 6.) The parties also requested an extension of the deadline to complete expert witness depositions from August 8 to August 31. (*Id.*) On July 17, the Court issued an order adopting the parties' proposed deadlines. (Dkt. No. 145.) Importantly, neither the Court's June 23 Order nor its July 17 Order authorized Plaintiff to serve a second rebuttal report (nor did Plaintiff ever seek leave

3

to serve such rebuttal). *See* L. Civ. R. 26(D)(2) (providing default schedule for expert disclosures "[a]bsent [a] consent order or *unless ordered otherwise*" (emphasis added)). The only reports that were requested and authorized were (1) a supplemental report by Plaintiff and (2) a report by Defendant responding to Plaintiff's supplemental report.

On July 24, 2023, pursuant to the Court's July 17 Order, Plaintiff timely served the "Supplemental/Rebuttal Expert Report of David Cass" ("July 24 Cass Report"). (Dkt. No. 171.) Similarly, on August 21, 2023, Defendant timely served the "Reply Expert Report of Divya Mathur, Ph.D." ("August 21 Mathur Report") (Dkt. No. 171-1). Also on August 21, Defendant served on Plaintiff documents for a sample of approximately 600 client accounts (which was first identified in the July 24 Cass Report) that were subsequently identified by Defendant and analyzed in the August 21 Mathur Report. (*See* Dkt. No. 167-4 at 2.) Defendant had not previously provided the documents for the 600-client sample to Plaintiff, though, notably, it does not appear that it was required to do so prior to that time in response to any discovery requests.[1] Additionally, prior to serving the August 21 Mathur Report, on August 17, 2023, Defendant produced to Plaintiff a set of documents—i.e., agreements for a sample of 15 clients—that Defendant inadvertently failed to produce due to a miscommunication with its e-discovery vendor, which were also analyzed in the August 21 Mathur Report. (*See* Dkt. No. 167-6 at 2.) There is no dispute between the parties that the 15 customer agreements should have been produced earlier in the litigation but-for Defendant's inadvertent error.

---

[1] As the parties explained during the September 8, 2023 hearing, a portion of the July 24 Cass Report analyzed information for a sample of 600 of Defendant's customers. The information analyzed was in a spreadsheet previously produced by Defendant. The underlying client agreements and other documentation had not been produced in the litigation—rather, Mr. Cass relied only on the spreadsheet for the relevant analysis in his July 24 Report. In preparing her responsive report to the July 24 Cass Report, Defendant's expert Dr. Mathur reviewed the (unproduced) client agreements and other documentation underlying the sample of 600 clients Mr. Cass had selected from the produced spreadsheet. Thus, in connection with serving the August 21 Mathur Report, Defendant also produced the underlying agreements and other documents that Dr. Mathur had reviewed in preparing that report.

Pursuant to the Court's various scheduling and discovery orders—particularly the Court's June 23 and July 17 Orders—the August 21 Mathur Report should have been the final expert report in this litigation. No additional expert reports (for either side) had been requested or authorized. Despite this, on August 27, 2023, Plaintiff served—without leave of the Court—the "Reply Report of David Cass" ("August 27 Cass Report") at issue here. (Dkt. No. 171-2.) Following service of the August 27 Cass Report, the parties agreed amongst themselves to reschedule Mr. Cass's expert deposition set for August 30 to September 16; Plaintiff did not agree, however, to reschedule Dr. Mathur's deposition, which was set for August 31. (*See* Dkt. No. 167-10 at 3-7.) Instead, Plaintiff asserted that Dr. Mathur's deposition should proceed as planned, and that if a second deposition of Dr. Mathur was necessary because of the August 27 Cass Report, the parties could seek Court intervention.[2] (*See* Dkt. No. 173 at 7.) Nevertheless, Defendant refused to make Dr. Mathur available for her August 30 deposition.

On August 30, Defendant CPA Global filed the instant Motion, asking the Court (1) to strike two of three sections in the August 27 Cass Report, (2) for a protective order regarding Dr. Mathur's anticipated non-appearance at her scheduled deposition on August 31, and (3) for an order extending the deadline to complete expert depositions until September 16, 2023. (Dkt. No. 166 at 1.) Defendant does not seek to strike the portion of the August 27 Cass Report that is based on documents it produced to Plaintiff for the first time in August 2023—several weeks *after* the deadline for Plaintiff to serve the July 24 Cass Report. (*See* Dkt. No. 167 at 11.) Plaintiff Brainchild opposes Defendant's Motion and requests that the Court admit the August 27 Cass Report in its entirety, or, in the alternative, that it strike the August 21 Mathur Report in its entirety, and also requests that the Court

---

[2] At the September 8 hearing counsel for Plaintiff argued that *both* depositions should have proceeded as planned, but because the deposition of Mr. Cass was noticed by Defendant, Plaintiff could not force Defendant to conduct the deposition as scheduled.

5

issue an order imposing attorneys' fees and costs in connection with the instant motion as well as the costs incurred by Mr. Cass in preparing the August 27 Cass Report. (*See* Dkt. No. 173 at 7, 23.)

Pursuant to Federal Rule of Civil Procedure 16(f), the Court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . . (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). "Rule 16(f) pertains to sanctions and specifically speaks to noncompliance with a scheduling order or pretrial order. . . . Among the remedies available to the Court is the option of striking the new material." *E. W., LLC v. Rahman*, No. 1:11CV1380 JCC/TCB, 2012 WL 4105129, at *4 (E.D. Va. Sept. 17, 2012) (striking "supplemental" expert report that contained "new information, new issues, and new expert analysis"). Although parties have an "obligation to disclose and supplement expert witness information in a timely fashion" pursuant to Federal Rule of Civil Procedure 26(a)(2)(E), "this duty does not permit a party to make an end-run around the normal timetable for conducting discovery." *Id.* (quoting *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 Fed. App'x 217, 231 (4th Cir. 2006)); *see also Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) ("Courts distinguish true supplementation (*e.g.*, correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing an expert report with a new and improved expert report."). It is also well-settled that district courts in the Fourth Circuit "are afforded substantial discretion in managing discovery." *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 12547260, at *2 (E.D. Va. July 31, 2014) (quoting *Hare v. Comcast Cable Comm. Mgmt.*, 564 Fed. App'x 23 (4th Cir. 2014)).

As an initial matter, the Court finds that there is good cause to permit Section III of the August 27 Cass Report, which Defendant does not seek to strike. Specifically, as Defendant has acknowledged, "it is based on documents that Mr. Cass did not have before" his July 24 report was

6

due.[3] (Dkt. No. 176 at 2.) Thus, it is fair to permit Plaintiff to serve this portion of the report that is based on the late-produced documents.

However, upon review of the parties' motions and in consideration of the lengthy procedural history of this case, the Court finds that Sections II and IV of Plaintiff's unauthorized August 27 Cass Report should be stricken as an attempted "end-run around the . . . timetable for conducting discovery" that the Court set forth in its prior orders. *Rahman*, 2012 WL 4105129, at *4. As noted above, none of the Court's prior orders granted leave for Plaintiff to serve a *second* rebuttal report for Mr. Cass (i.e., a third Cass report); instead, the Court's June 23 and July 17 Orders (1) extended the "rebuttal" deadline for Plaintiff, and (2) allowed Plaintiff's "rebuttal" report to be a "supplemental" report in that it could include new opinions and material in light of the fact that much of the discovery documents Plaintiff received from Defendant were received after Plaintiff served its first expert report in May 2023. In fairness, the Court also provided Defendant an opportunity to serve a "supplemental responsive" expert report by the specified deadlines, but at no point did the Court grant leave for Plaintiff to serve a *second* rebuttal report to respond to Defendant's responsive report. And at no point did Plaintiff seek leave for an additional report.

Despite the plain language of the Court's June 23 and July 17 Orders, Plaintiff argues that the August 27 Cass Report should be permitted because the August 21 Mathur Report proffers "new opinions" that are not permissible in a rebuttal report. (*See* Dkt. No. 173 at 17–18.) As stated above, however, the Court clearly authorized Defendant to serve a "supplemental *responsive*" expert report to Plaintiff's July 24 report(s). There is no dispute that the August 21 Mathur Report was authorized and timely served under the Court's June 23 and July 17 Orders. To the extent Plaintiff objected to the content of the August 21 Mathur Report, Plaintiff was free to seek Court intervention prior to the

---

[3] Defendant also acknowledge at the September 8 hearing that certain portions of Section III(A) of the August 27 Cass Report substantively analyze and/or rely upon the late-produced agreements.

7

deadline for expert depositions. Plaintiff did not do so. Moreover, Plaintiff's own briefing characterized the substance of the August 21 Mathur Report as responding to assertions in the July 24 Cass Report. (*See id.* at 17 ("The vast majority of Dr. Mathur's Second Report is devoted to supporting her opinion that Mr. Cass's assertion that CPA's contracts have standard language is incorrect.").) Thus, even by Plaintiff's own description, the August 21 Mathur Report comports with the Court's orders.

Additionally, Plaintiff does not argue that its August 27 Cass Report should be permitted as a mere supplemental disclosure pursuant to Federal Rule of Civil Procedure 26(a)(2)(E)—indeed, Sections II and IV cannot be characterized as merely seeking to correct inadvertent errors or omissions in the July 24 Cass Report. Section II of the August 27 Cass Report is not based on any newly disclosed documents or information; instead, it merely rebuts the opinions in the August 21 Mathur Report regarding Mr. Cass's methodology. (*See* Dkt. No. 173 at 10-11 (stating that Section II of the Cass Report "explains why the randomization was, in fact, not flawed" in response to the August 21 Mathur Report).) And although the parties appear to disagree on whether Section IV of the August 27 Cass Report is based on documents not produced to Plaintiff until August 17,[4] Defendant has stated that it "would be willing to withdraw Dr. Mathur's opinions based on the Supplemental 15 Account Sample" in the August 21 Mathur Report to moot any argument about

---

[4] Plaintiff states that "Section IV of the [August 27 Cass Report] involves analysis of two bodies of *renewal notices*, one that was previously provided, and one that CPA admits to having failed to produce when ordered"; but it also says that Defendant "failed to produce *contracts* used by Mr. Cass in Section IV." (Dkt. No. 173 at 11 (emphasis added).) By contrast, Defendant asserts that "in Section IV of his report, Mr. Cass opines for the first time that 4,092 patent renewal notices sent by CPA Global superseded any renewal agreements associated with the 115 Account Sample," but that "the production of these renewal notices was completed on June 30—over three weeks before his July 24 report." (Dkt. No. 167 at 10.) Defendant further argues that although it inadvertently failed to produce agreements for the 15-client sample until August 17, the July 24 Cass Report could have, but did not, include a similar analysis regarding the renewal notices and corresponding agreements for the other 100 clients in the sample, which *were* produced before July 24. (*See id.* at 11 n.3.)

8

whether Section IV should be permitted due to Defendant's failure to timely produce documents. (Dkt. No. 176 at 5 & n.3.) Under the circumstances, the Court finds that to be a fair outcome. Thus, the Court finds that those specific portions of the August 21 Mathur Report should also be stricken.[5]

Finally, the Court finds that it would be in the interest of justice to grant the parties leave to take the out-of-time expert depositions of Mr. Cass and Dr. Mathur. As discussed during the September 8 hearing, the depositions must be completed by September 18, 2023. The Court otherwise declines to extend any discovery deadlines and neither side is authorized to serve any additional expert reports. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Strike, for a Protective Order, and for an Extension (Dkt. No. 166) is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Sections II and IV of the August 27, 2023 Reply Report of David Cass are hereby **STRICKEN**. Plaintiff is **DIRECTED** to serve a revised copy of the August 27, 2023 Reply Report of David Cass that omits those portions of the Report by 5:00 p.m. EDT on September 13, 2023; it is further

**ORDERED** that the parties are granted leave to take the out-of-time expert depositions of David Cass and Divya Mathur, which must be completed by September 18, 2023; it is further

**ORDERED** that Plaintiff's Motion for Sanctions (Dkt. No. 173) is **GRANTED IN PART** such that the following portions of the August 21, 2023 Reply Expert Report of Divya Mathur are hereby **STRICKEN**:

- The text of subsection (i) in Paragraph 13
- Footnotes 13 & 15

---

[5] During the September 8 hearing, Defendant represented that certain portions of Section III(A) of the August 21 Mathur Report substantively analyze and/or rely upon those late-produced customer contracts.

9

- Paragraphs 19–22 (including all subparts)

Defendant is **DIRECTED** to serve a revised copy of the August 21, 2023 Reply Expert Report of Divya Mathur that omits those portions of the Report by 5:00 p.m. EDT on September 13, 2023; it is further

**ORDERED** that Plaintiff's Motion for Sanctions (Dkt. No. 173) is **DENIED** in all other respects.

**ENTERED** this 8th day of September, 2023.

/s/
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia

10