**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |
|---|---|
| BRAINCHILD SURGICAL DEVICES, LLC, a New York limited liability company, on behalf of themselves and those similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>CPA GLOBAL LIMITED a foreign entity formed under the laws of the Island of Jersey, Channel Islands,<br><br>               Defendant. | Case No. 1:21-cv-00554-RDA-LRV<br><br>**REDACTED VERSION<br>OF DOCUMENT<br>FILED UNDER SEAL** |

**DEFENDANT CPA GLOBAL LIMITED'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE SUBMITTED IN CONNECTION WITH PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     JOSEPH MISCHLER'S TESTIMONY (EXHIBIT P) AND RELATED EXHIBIT Q ARE INADMISSIBLE AND SHOULD BE EXCLUDED............................................2

     A.     Brainchild's Opposition Confirms That Mr. Mischler's Testimony Is Irrelevant................................................................................2

     B.     Brainchild Does Not Refute That Exhibit Q Is Unauthenticated, Irrelevant, and Hearsay................................................................4

II.     EXHIBITS ABOUT DEALINGS WITH THIRD PARTIES PURSUANT TO SEPARATE CONTRACTS SHOULD BE EXCLUDED....................................................5

III.     EXHIBITS CONTAINING INADMISSIBLE HEARSAY SHOULD BE EXCLUDED............................................................................7

     A.     Exhibits I, O, and W Are Inadmissible Hearsay from Third Parties ......................7

     B.     Exhibits H and I Contain Inadmissible Hearsay Within Hearsay.........................10

IV.     BRAINCHILD'S EXPERTS' DECLARATIONS AND ATTACHED REPORTS SHOULD BE EXCLUDED.................................................................12

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*BoDeans Cone Co. v. Norse Dairy Sys., L.L.C.*,
  678 F. Supp. 2d 883 (N.D. Iowa 2009)...............................................................................11

*Brown v. Novartis Pharms. Corp.*,
  2012 WL 3066588 (E.D.N.C. July 27, 2012) ...................................................................7, 9

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020)..................................................................................4

*Conts. Materials Processing, Inc. v. Kataleuna GmbH Catalysts*,
  164 F. Supp. 2d 520 (D. Md. 2001) ......................................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)............................................................................................................12

*Davis v. Nationwide Mut. Fire Ins. Co.*,
  811 F. Supp. 2d 1240 (E.D. Va. 2011) ...............................................................................12

*Eagle v. Vee Pak, Inc.*,
  343 F.R.D. 552 (N.D. Ill. 2023)............................................................................................4

*Fed. Trade Comm'n v. Fleetcor Techs., Inc.*,
  620 F. Supp. 3d 1268 (N.D. Ga. 2022).............................................................................8, 11

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  2018 WL 6576029 (N.D. Cal. Dec. 13, 2018) ......................................................................8

*In re Flowers Foods, Inc. Sec. Litig.*,
  2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)......................................................................4

*Greensboro Pro. Firefighters Ass'n v. City of Greensboro*,
  64 F.3d 962 (4th Cir. 1995) ..................................................................................................7

*Hill v. Novartis Pharms. Corp.*,
  944 F. Supp. 2d 943 (E.D. Cal. 2013)...............................................................................8, 9

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
  790 F.3d 532 (4th Cir. 2015) .............................................................................................1, 2

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  2023 WL 2899528 (N.D. Cal. Apr. 10, 2023) ......................................................................8

*Quesenberry v. Volvo Grp. N. Am., Inc.*,
  267 F.R.D. 475 (W.D. Va. 2010).......................................................................................7, 9

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997)....................................................................................................1

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*,
  699 F.2d 1292 (9th Cir. 1983) ..............................................................................................8

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999).................................................................11

*Shockley v. Foster*,
    2021 WL 2828516 (E.D. Va. July 7, 2021) ...........................................7

*THI of S.C. at Charleston, LLC v. Vance*,
    2014 WL 896717 (D.S.C. Feb. 26, 2014)...............................................6

*Turpin v. Branaman*,
    58 S.E.2d 63 (Va. 1950)..........................................................................6

*United States v. Gomez*,
    774 F. App'x 136 (4th Cir. 2019) ........................................................10

*United States v. Heyward*,
    729 F.2d 297 (4th Cir. 1984) ...............................................................10

*Univ. City v. Home Fire & Marine Ins. Co.*,
    114 F.2d 288 (8th Cir. 1940) .................................................................6

*V5 Techs., LLC v. Switch, Ltd.*,
    2021 WL 5283952 (D. Nev. Nov. 10, 2021) ..........................................8

*Vazquez v. Lopez-Rosario*,
    134 F.3d 28 (1st Cir. 1998)...................................................................12

*Vellali v. Yale Univ.*,
    308 F. Supp. 3d 673 (D. Conn. 2018) ....................................................4

*Walden v. Seaworld Parks & Ent., Inc.*,
    2012 WL 4050176 (E.D. Va. May 31, 2012) ..........................................8

*Womack v. Tiereo Maryland Inc.*,
    38 F. App'x 850 (4th Cir. 2002) ............................................................7

## Rules and Regulations

Fed. R. Civ. P. 56.........................................................................................1

Fed. R. Evid. 402 ........................................................................................7

Fed. R. Evid. 702 ......................................................................................12

Fed. R. Evid. 801 ........................................................................................7

Fed. R. Evid. 803 ......................................................................................11

Fed. R. Evid. 807 ........................................................................................9

## Other Authorities

11 James Wm. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015)............................1

Restatement (Third) of Agency § 1.01 .......................................................7

Defendant CPA Global Limited ("CPA Global" or "Defendant") respectfully submits this reply in support of its motion *in limine* to exclude certain evidence submitted in support of Plaintiff Brainchild Surgical Devices, LLC's ("Brainchild" or "Plaintiff") Motion for Partial Summary Judgment (Dkt. 185; "Motion" or "Mot.").

## INTRODUCTION

Because there is no evidence that CPA Global breached the parties' contract, Brainchild's Motion looks to documents and testimony having nothing to do with Brainchild, the contract, or even the relevant time period, all of which are inadmissible. Brainchild argues that certain of these documents, as well as the testimony of former CPA Global employee Joseph Mischler, are admissible because they are relevant to show CPA Global's billing and charging practices. They are not. Documents and testimony about other clients, other contracts, and other time periods simply are not relevant to whether CPA Global breached its agreement with Brainchild. Brainchild also cannot show that the third-party authors of several presentations it relies upon were acting as CPA Global's agents, nor that unattributed and potentially made-up statements contained in those presentations were made by CPA Global employees. Finally, for the reasons explained in CPA Global's motions to exclude the testimony of Brainchild's experts, David Cass and John Keogh, their declarations and associated exhibits are likewise inadmissible.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), a court may not consider "the content or substance of otherwise inadmissible materials" unless "the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015) (quoting 11 James Wm. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015)); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("The principles governing admissibility of evidence do not change

on a motion for summary judgment.").  "If [a party] objects to the court's consideration of material cited to support or dispute a fact, the [proponent] has the burden to . . . explain the admissible form that is anticipated."  *Humphreys*, 790 F.3d at 538–39 (internal quotation marks and citations omitted).

## ARGUMENT

**I.    JOSEPH MISCHLER'S TESTIMONY (EXHIBIT P) AND RELATED EXHIBIT Q ARE INADMISSIBLE AND SHOULD BE EXCLUDED**

**A.    Brainchild's Opposition Confirms That Mr. Mischler's Testimony Is Irrelevant**

Brainchild does not dispute that Mr. Mischler, who left CPA Global in early 2016, has no personal knowledge about CPA Global's practices and policies during the relevant time period, or about Brainchild or its agreement with CPA Global.  *See* Ex.[1] 1 (Dkt. 214-2) at 131:14-22, 132:14-133:9, 160:20-25.  Brainchild instead argues that Mr. Mischler's testimony is relevant because CPA Global's "overcharging practices testified to by Mr. Mischler continued through Brainchild's involvement with CPA."  Opp. at 5 (emphasis removed).  This argument fails for several reasons.

*First*, Mr. Mischler did not testify to any "overcharging practices."  Indeed, Brainchild cites no testimony where Mr. Mischler opined that CPA Global overcharged its patent renewal customers, let alone had a practice of doing so.  Perhaps that is because ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████  Nov. 20, 2023 Decl. of Matthew Hamann, Ex. 1 at 97:21-98:24.

---

[1]  "Ex." refers to the exhibits attached to the October 31, 2023 Declaration of Kyra Simon (Dkt. 214-1), while "Abbott Ex." refers to the exhibits attached to the September 29, 2023 Declaration of Ryan Abbott (Dkt. 185-2).

*Second*, even if Mr. Mischler had testified to "overcharging practices" (which he did not), such testimony would be irrelevant because Mr. Mischler admitted he has no idea whether such "practices" continued while Brainchild was a customer.  Ex. 1 at 132:14-133:9.  Brainchild tries to sidestep this problem by arguing that "numerous documents . . . corroborate that the practices testified to by Mr. Mischler" continued while Brainchild was a customer.  Opp. at 5.  This is inaccurate.  Notably, none of the documents cited by Brainchild relate to CPA Global's general practices, but rather specific responses to specific concerns of specific customers, as described further below.[2]  But even if Brainchild were correct, this only underscores the irrelevance of Mr. Mischler's testimony.  If Brainchild can cite documents and testimony showing CPA Global's actual practices from the relevant time period, there is no need to rely on the testimony of someone who has no personal knowledge of those practices.

*Third*, even if Mr. Mischler had testified to "overcharging practices" (which he did not), and his testimony concerned the relevant period (it does not), it would still be irrelevant.  Under Brainchild's theory, CPA Global breached the parties' contract by charging more for Country Charges and Funds Management Charges than its associated pass-through and/or internal costs and/or some profit (depending on which of Brainchild's several, shifting interpretations one adopts) incurred in renewing Brainchild's non-U.S. patents.  But by Mr. Mischler's own admission, he has no knowledge of those costs, and thus no testimony relevant to whether CPA

---

[2]  While not relevant to the present motion, Brainchild cites no evidence in support of its assertion that CPA Global's practices remained unchanged while Brainchild was a customer.  Opp. at 5.  In fact, Brainchild's own cited documents show the contrary.  Exhibit M to Brainchild's Motion, for example, ██████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████  *See* Abbott
Ex. M (Dkt. 185-15) at 2.

Global overcharged Brainchild.[3]   Ex. 1 at 153:24-154:4, 155:1-9, 156:7-12.   Mr. Mischler's

testimony about his experiences before Brainchild was a CPA Global customer is not probative of

whether CPA Global's charges to renew Brainchild's non-U.S. patents exceeded CPA Global's

costs to renew them.   Notably, Brainchild has failed to cite a single case permitting "practices"

evidence in a breach of contract case.[4]

In short, Mr. Mischler has no relevant personal knowledge to offer in this case and his

testimony in Exhibit P should be excluded.

**B.   Brainchild Does Not Refute That Exhibit Q Is Unauthenticated, Irrelevant, and Hearsay**

Exhibit Q is a single page that Mr. Mischler produced from "the back of a filing cabinet,"

and which appears to date from late 2011 or 2012. Ex. 1 at 145:18-146:13.   Brainchild cites Exhibit

Q to argue that CPA Global purportedly "advertised to investors that its invoices were difficult to

understand and that few clients requested fee breakdowns."   Pl.'s Mem. in Supp. of Mot. for Partial

Summ. J. (Dkt. 185), Statement of Fact ("SOF") ¶ 25.   Neither Mr. Mischler nor Brainchild has

produced the document from which the page came.

_____

[3]   Brainchild attempts to downplay Mr. Mischler's lack of knowledge about CPA Global's costs, even during his time at CPA Global, as a "red herring." Opp. at 7. But Mr. Mischler's lack of knowledge about CPA Global's costs "to hedge against the risk' of currency fluctuation," Ex. 1 at 153:24-154:4; "how much debt CPA Global carried in order to advance client fees," *id.* at 155:1-9; or "whether CPA Global incurred costs to finance that debt," *id.* at 156:7-12, goes directly to Brainchild's allegation that Mr. Mischler's testimony supports the claim that "any actual costs [to CPA] were greatly outweighed by the markup," Opp. at 7 (quoting Abbott Ex. P (Dkt. 185-18) at 66:7-67:1; 67:23-25).   And the fact that Mr. Mischler "may" have known how much debt CPA Global carried at one point,  Ex. 1 at 154:19-25, does not mean that he "did," much less that he knew other costs related to the funds management charge, as Brainchild asserts, Opp. at 8.

[4]   None of the cases cited by Brainchild involve breach of contract claims.   *See In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *3 (M.D. Ga. Mar. 23, 2018) (securities fraud); *Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552, 558 (N.D. Ill. 2023) (racial discrimination); *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 390 (S.D.N.Y. 2020) (securities fraud); *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 677 (D. Conn. 2018) (ERISA).[4]

Brainchild argues that Exhibit Q was sufficiently authenticated because Mr. Mischler testified, "Yeah, this – this is – this is an investor deck slide. This is an investor deck slide," Abbott Ex. P (Dkt. 185-18) at 115:3-14, and that the contrary testimony CPA Global cited was a different page from his production, Opp. at 8-9. But even if Exhibit Q came from an "investor deck"— which seems tenuous given that Exhibit Q (described as "slide 12" in Mr. Mischler's testimony) appears to come from the same document as "slide 10" that Mr. Mischler was unable to identify— there is no evidence it was prepared by CPA Global or ever sent to anyone.

In any event, the document is irrelevant. What CPA Global purportedly told an unidentified third-party *six years before Brainchild became a CPA Global customer* simply has no bearing on whether CPA Global breached the parties' contract. Moreover, nowhere does Exhibit Q suggest that CPA Global's invoices were difficult to understand or that CPA Global sought to hide its fees, as Brainchild suggests. *See also* Abbott Ex. P at 117:21-24. Exhibit Q should thus be excluded.

## II.   EXHIBITS ABOUT DEALINGS WITH THIRD PARTIES PURSUANT TO SEPARATE CONTRACTS SHOULD BE EXCLUDED

Brainchild argues that Exhibits J, K, L, X, Z, and AA are "directly relevant to show CPA's general charging practices." Opp. at 9. That assertion is simply incorrect. Each of these documents deals with specific issues that arose in the specific circumstances of individual clients.[5]

Brainchild admits that courts routinely exclude as irrelevant evidence concerning one party's transactions with a third party not involved in the suit at hand. *See* Opp. at 9. Nevertheless, Brainchild attempts to distinguish these cases on the basis that they "stand for the uncontroversial

---

[5]   The only kernel of a "general charging practice[]" in these exhibits is that CPA Global charges more than just the third-party agent fee for the Country Charge. *See* Opp. at 10 (citing Abbott Exs. J (Dkt. 185-12), K (Dkt. 185-13), and L (Dkt. 185-14)). But that fact is not disputed. *See* CPA Global Limited's Opp. to Pl.'s Mot. for Partial Summ. J. (Dkt. 216) SOF ¶ 31.

position that evidence of a contract with a third party is not relevant to the *interpretation of the terms* or the *formation* of the contract at issue in the suit." *Id.* This is not true—the decisions were not so limited. *See Turpin v. Branaman*, 58 S.E.2d 63, 65–66 (Va. 1950) (evidence related to the defendant's practices under other contracts with regard to when he acted as a purchaser versus as a broker "was remote, irrelevant and of no probative value"); *THI of S.C. at Charleston, LLC v. Vance*, 2014 WL 896717, at *1–2 (D.S.C. Feb. 26, 2014) (evidence of practices in connection with other contracts was not relevant to determining whether the contract was unconscionable or whether there was a lack of consideration); *Univ. City v. Home Fire & Marine Ins. Co.*, 114 F.2d 288, 294 (8th Cir. 1940) (excluding memoranda and a letter discussing other policies).

Moreover, what the parties' contract means and whether CPA Global breached it by charging more than allowed are the key issues here. There is no dispute over what materials were sent to Brainchild, or what they said, or the amounts Brainchild was charged. Pl.'s Opp. to Def.'s Mot. for Summ. J. (Dkt. 205) SOF ¶¶ 4, 7, 10-11. Brainchild also concedes that it never sought to negotiate its contract or otherwise asked any questions about the charges. *Id.* ¶¶ 5-6, 8-9, 26. How CPA Global decided to respond to unique issues raised by other clients has no bearing on whether CPA Global breached its contract with Brainchild. As the court in *Turpin* recognized, a defendant's conduct with regard to other contracts has no bearing on whether he breached the parties' contract where "[t]here was no ambiguity in the contract relied upon by plaintiffs or in that contended for by defendant." *Turpin*, 58 S.E.2d at 65-66.

Because Exhibits J, K, L, X, Z, and AA concern CPA Global's negotiations and dealings with third parties pursuant to different contracts that have no bearing on any issue in this case, they are irrelevant and inadmissible under Federal Rule of Evidence 402.

## III.   EXHIBITS CONTAINING INADMISSIBLE HEARSAY SHOULD BE EXCLUDED

### A.   Exhibits I, O, and W Are Inadmissible Hearsay from Third Parties

Brainchild does not dispute that Exhibits I, O, and W were prepared by third parties and thus presumptively inadmissible hearsay. *See Shockley v. Foster*, 2021 WL 2828516, at *5 (E.D. Va. July 7, 2021) (Alston, J.) *aff'd,* 2021 WL 6116850 (4th Cir. Dec. 27, 2021) ("Hearsay 'is neither admissible at trial nor supportive of an opposition to a motion for summary judgment.'" (quoting *Greensboro Pro. Firefighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995)). Brainchild argues that these documents are nonetheless admissible under the exception for statements by party agents. Opp. at 12–13; *see* Fed. R. Evid. 801(d)(2)(D) (opposing party statements include statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed"). Brainchild is incorrect.

To establish that Federal Rule of Evidence 801(d)(2)(D) applies, "[t]he party offering the evidence must show that the declarant is an agent of the party-opponent and the scope of that agency." *Brown v. Novartis Pharms. Corp.*, 2012 WL 3066588, at *12 (E.D.N.C. July 27, 2012) (citing *Womack v. Tiereo Maryland Inc.*, 38 F. App'x 850, 857 (4th Cir. 2002)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id*. (quoting Restatement (Third) of Agency § 1.01); *see also Quesenberry v. Volvo Grp. N. Am., Inc.*, 267 F.R.D. 475, 483 (W.D. Va. 2010) (accord). "[T]he fact of being an advisor or consultant . . . alone" is not enough to create an agent relationship. *Hill v. Novartis Pharms. Corp.*, 944 F. Supp. 2d 943, 950 (E.D. Cal. 2013). Brainchild cannot show that there was an agent relationship in connection with any of these exhibits.

7

Exhibits O and W are excerpts of a document prepared by third-party Ernst & Young. Brainchild argues that testimony from Gordon Samson establishes that Ernst & Young was acting as CPA Global's agent when it prepared the presentation.  Opp. at 12.  But Mr. Samson testified only that ████████████████████████████████████████████████████████████ ████████████████████████████████████  The presentation itself also specifically states that it was prepared for a different entity, ████████████████.  Ex. 3 (Dkt. 214-4) at 2.  This stands in contrast to each of the cases cited by Brainchild, where the third party that prepared the documents at issue was retained by the party itself.[6]  Even setting that aside, the mere fact that Ernst & Young was retained to prepare a third-party due diligence report does not render them CPA Global's agent.  *See Conts. Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp. 2d 520, 530–31 (D. Md. 2001) (excluding audit reports authored by Schitag, Ernst & Young and Price Waterhouse because plaintiff "did not establish that the drafters of the audit reports were 'agents' of defendants as opposed to independent contractors").

Similarly, Exhibit I is a document that was prepared by third-party strategy and marketing consultants, Simon-Kucher & Partners ("Simon-Kucher"), apparently in advance of a "workshop" with an agenda set by Simon-Kucher.  Abbott Ex. I (Dkt. 185-11) at 1–2.  Brainchild cites no

_____

[6]  *See Walden v. Seaworld Parks & Ent., Inc.*, 2012 WL 4050176, at *2 (E.D. Va. May 31, 2012) ("The accessibility audit at issue was conducted by an outside consultant specially retained by the defendant . . . ."); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306–07 (9th Cir. 1983) ("This survey was prepared at the request of Mr. Nishizawa, [defendant] ALP's chairman of the board."); *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6576029, at *2 (N.D. Cal. Dec. 13, 2018) ("Qualcomm does not dispute BCG created [the documents] for Qualcomm and at Qualcomm's direction."); *V5 Techs., LLC v. Switch, Ltd.*, 2021 WL 5283952, at *1 (D. Nev. Nov. 10, 2021) (Plaintiff "Cobalt hired WiredRE to create the report . . . ."); *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 2899528, at *3 (N.D. Cal. Apr. 10, 2023) ("[r]eport [p]repared by the [e]ntity that [c]onducted Altria's [r]egulatory [d]ue [d]iligence"); *Fed. Trade Comm'n v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1301 n.12 (N.D. Ga. 2022) ("studies and surveys that were completed by consulting firms specially retained by FleetCor").

evidence that Simon-Kucher was acting as CPA Global's agent in preparing this report.  *See* Opp. at 14–15.  There is no evidence that CPA Global controlled Simon-Kucher in connection with the presentation, as required in order to establish an agency relationship.  *See Brown*, 2012 WL 3066588, at *12 (excluding emails from advisory board members where "Plaintiffs have not shown that defendant exercised control over Dr. Schubert or any other members of the Advisory Boards, nor have they demonstrated that the members agreed to act on defendant's behalf"); *Hill*, 944 F. Supp. 2d at 950 (excluding emails from third party advisors where "there is, at present, simply no evidence that would permit the Court to conclude that [the advisors] were agents (or employees) of Novartis, let alone evidence to show that the emails related to matters within the scope of their purported agency").  That the document was "created for CPA," or that some of the information in the presentation was "provided by CPA," Opp. at 14, does not mean that Simon-Kucher was acting as CPA Global's agent.  *See Quesenberry*, 267 F.R.D. at 482 (excluding actuarial report and letters "prepared by the actuarial firm . . . for internal use at Volvo"); *Hill*, 944 F. Supp. 2d at 950 (excluding comments by advisors to white paper provided by defendant).

Nor has Brainchild established that the residual exception under Federal Rule of Evidence 807 is appropriate.  Under Rule 807, hearsay may be admitted if "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a).  "The residual exception is to 'be used very rarely, and only in exceptional circumstances.'" *United States v. Gomez*, 774 F. App'x 136, 137 (4th Cir. 2019) (quoting *United States v. Heyward*, 729 F.2d 297, 299–300 (4th Cir. 1984)).

Here, Brainchild makes no argument as to why either document is sufficiently trustworthy or that it is more probative than other evidence that can be reasonably obtained. *See* Opp. at 13. Exhibit I, for example, is described as a "workshop" presentation and (as described below) is rife with unattributed double-hearsay. And there is no reason why the statements in Exhibits I, O, and W are more probative than other evidence that could have been obtained through reasonable efforts. In short, Brainchild fails to show any "exceptional circumstances" justifying the application of the residual exception. *Gomez*, 774 F. App'x at 137.

**B.    Exhibits H and I Contain Inadmissible Hearsay Within Hearsay**

1.    <u>Slides 4 and 6 of Exhibit H Are Inadmissible Hearsay Within Hearsay</u>

Brainchild argues that "it is self-evident that the statements" on slide 4 of Exhibit H "came from the sales and customer service teams at CPA, as part of a survey commissioned by CPA." Opp. at 16. The testimony of a CPA Global employee involved in preparing the presentation, Marcus Liddiard, however, is that it is decidedly ***not*** self-evident that the statements are quotes from CPA Global employees. Ex. 2 (Dkt. 214-3) at 108:12-109:3 ("I can't be — I can't be certain where they came from . . . I'm not sure how correct these—these comments are."). The comments by Simon-Kucher on slide 4 that ███████████████████████████████████████ ████████████████████████████████████████ Abbott Ex. H (Dkt. 185-10) at 6, does not demonstrate that the specific quotes included on the slide are actual, direct quotes from CPA Global employees. For the same reason, the purported statements reflected in the aggregate survey results in slide 6 are inadmissible hearsay.

Brainchild also contends that "responses to surveys, like the statements on Slide 4 [and 6] of Exhibit H, qualify as statements of a declarant's then-existing state of mind, and are thus admissible under Rule 803(3)." Opp. at 16. But Brainchild has not shown that these statements actually represent anyone's state of mind, because it is unknown where they came from and

whether they were even statements made by any individuals.  *See* Ex. 2 at 109:1-3 (explaining quotes could have been a "kind of articulation regarding . . . a problem statement that . . . could be solved").  Regardless, the state of mind of unidentified individuals from years before the Brainchild became a CPA Global customer has no relevance to whether there was a breach of the parties' contract.  Notably, none of Brainchild's cited cases addressed breach of contract claims.[7]

Slides 4 and 6 should be excluded as inadmissible double hearsay.

2.    <u>Slide 24 of Exhibit I is Inadmissible Hearsay Within Hearsay</u>

Brainchild argues that the quotes contained in Slide 24 of Exhibit I are not double-hearsay because "[t]he document repeatedly states that the information (and quotes) contained within it



Opp. at 14-15 (quoting Abbott Ex. I at 21–22).  But Brainchild's referenced language comes from Slides 21 and 22—an attribution lacking for the quotes on Slide 24.  *See* Abbott Ex. I at 24.  This indicates, if anything, that the quotes on Slide 24 are not Moreover, even as to Slides 21 and 22, the presentation is clear that *Id.* at 21–22.

Brainchild next argues that, even if these quotes were made up by Simon-Kucher, they are still admissible because Simon-Kucher was acting as CPA Global's agent.  Opp. at 15 n.1.  But

---

[7] *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999) ("Cases in the Lanham Act context demonstrate, moreover, that the mental impressions with which an audience is left can be relevant, and sometimes even necessary, to establish what a defendant is implying in a challenged representation."); *BoDeans Cone Co. v. Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d 883, 902 (N.D. Iowa 2009) (in antitrust case, survey "shows that a large percentage of Norse Dairy's customers would like to switch suppliers, but believe that they cannot, and thereby shows that other competitors are foreclosed from competing, because available customers believe that they are locked in to Norse Dairy"); *Fed. Trade Comm'n v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1300 (N.D. Ga. 2022) (in deceptive advertising case brought by the FTC, internal customer surveys were "'highly probative' evidence of actual deception").

even assuming that is true (and there is no evidence it is), the origin of these purported quotes remains unknown and thus they are inadmissible. *See Davis v. Nationwide Mut. Fire Ins. Co*., 811 F. Supp. 2d 1240, 1251 n.13 (E.D. Va. 2011) ("But even assuming that [the declarant] was an agent for [the defendant] capable of making a statement which would be admissible as a party-opponent admission, the statement itself is based on hearsay.  There is nothing to suggest that [the declarant] had personal knowledge with respect to the" statement at issue, and plaintiff "admits that he does not know where [the declarant] obtained this information."); *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998) ("[U]nattributed statements . . . cannot be admissible" because "it is impossible to determine whether the original declarant also fits within the party-opponent definition.").  Slide 24 should be excluded as inadmissible hearsay.

## IV.   BRAINCHILD'S EXPERTS' DECLARATIONS AND ATTACHED REPORTS SHOULD BE EXCLUDED

As described in CPA Global's Motion to Exclude the Testimony of David A. Cass (Dkt. 190) and its Motion to Disqualify Expert Witness John Keogh, or, in the Alternative, Strike or Exclude His Testimony (Dkt. 193), and its replies in support of those motions (Dkt. 230, 234), these reports should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Brainchild cites no reason why they should not be excluded other than its own oppositions to those motions.

## CONCLUSION

For the reasons set forth above, the Court should grant CPA Global's motion *in limine* to exclude Exhibits I, J, K, L, O, P, Q, X, Z, AA, and portions of Exhibit H to the declaration of Ryan Abbott (Dkts. 185-11–185-13, 185-17–185-19, 185-26, 185-28, 185-29), and the Declarations of David A. Cass and John Keogh and associated exhibits (Dkts. 185-31–185-34), and disregard those portions of Plaintiff's Motion that rely on them.

Dated: November 20, 2023

Respectfully submitted,

*/s/ Eric C. Lyttle*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Eric C. Lyttle, VSB No. 48518
Meghan M. McCaffrey (*pro hac vice*)
J. Matthew Hamann (*pro hac vice*)
Kyra Simon (*pro hac vice*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
ericlyttle@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
matthewhamann@quinnemanuel.com
kyrasimon@quinnemanuel.com

Michael L. Fazio (*pro hac vice*)
Anthony P. Alden (*pro hac vice*)
Maria M. Mortenson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Phone: (213) 443-3000
Fax: (213) 443-3100
michaelfazio@quinnemanuel.com
anthonyalden@quinnemanuel.com
mariamortenson@quinnemanuel.com

*Counsel for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 20th day of November 2023, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, and caused to be served by electronic mail a copy of the foregoing document upon the following parties:

BROWN NERI SMITH & KHAN, LLP
Geoffrey A. Neri, Esq, VSB No. 72219
Ethan J. Brown, Esq.
Ryan Abbott, MD, PhD, Esq.
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
Geoff@bnsklaw.com
Ethan@bnsklaw.com
Ryan@bnsklaw.com

*Counsel for Plaintiff and the Proposed Class*

*/s/ Eric C. Lyttle*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Eric C. Lyttle, VSB No. 48518

1300 I Street, NW, Suite 900
Washington, D.C. 20005
Phone: (202) 538-8000
Fax: (202) 538-8100
ericlyttle@quinnemanuel.com